## TRAPP et al. v. DYKES et al.

No. 18827.    Opinion Filed Dec. 3, 1929.

Blanton, Osborn & Curtis, Mac Q. Williamson, Carrol J. Moody, Co. Atty., and Homer L. Hurt, Asst. Co. Atty., for plaintiffs in error.

Melton & Melton and O. W. Patchell, for defendants in error.

HALL, C. This was an action instituted by defendants in error herein, being certain taxpayers in Garvin county, against the board of county commissioners of that county, to restrain the said board from reissuing certain bonds representing a bond issue which had been previously authorized by a vote of the people, and issued and approved pursuant to law, and later canceled and destroyed pursuant to regular proceedings had by the county commissioners. In other words, the county commissioners were seeking a resurrection of the destroyed bonds, and it was at these activities that the petition for injunction was directed. A permanent injunction was granted.

In the year 1925, the board of county commissioners submitted to the qualified electors of Garvin county a proposal to issue its bonds in the sum of $720,000. The purpose of the bond issue was to construct roads and bridges. As a part of the proceedings for the issuance of the bonds, and upon which the electors voted to either issue or not issue the bonds, a condition was as follows:

"The funds derived from the sale of said bonds to be expended for the construction of said permanent state roads and bridges only when an equal amount of money is available from federal, state or other sources for use in constructing said permanent or county roads and bridges. The ballots used at said election shall set out the proposition as above set forth, and shall contain the words: 'Yes _____ No _____.' "

The issuance of the bonds was authorized by the electors by more than three-fifths of the votes. The bonds were thereafter regularly issued and deposited with the county treasurer. The bonds were never sold. In the year 1926 the county commissioners commenced proceedings pursuant to sections 8603 and 8604, Comp. Stat. 1921, to cancel and destroy these bonds. The resolutions seeking the destruction of the bonds set out and enumerated generally and specifically the reason for the destruction of the bonds; the general reason being that the necessity for which the bonds were voted and issued had ceased to exist; and the particular reason why this necessity did not exist and could not exist, was the fact that the State Highway Commission had announced its intention not to meet the provisions of the election proclamation as above set forth; that is, they refused to match the funds represented by the bond issue; that the county commissioners had made numerous attempts to induce the State Highway Commission to comply with the conditions upon which the bonds were issued, and that they, the said board, had become convinced that these conditions would never be met by the State Highway Commission.

The resolution was exceedingly lengthy and recited an intention to destroy the bonds pursuant to the statutes so made and provided. The statutory notice was given and published in three issues of a weekly newspaper and posted according to law. Pursuant to the resolution and notice, on the day appointed the bonds were voluntarily destroyed by cremation or by burning same in the furnace of the courthouse basement in the presence of numerous persons.

On a subsequent date, nearly one year thereafter, the personnel of the State Highway Commission was changed upon the induction of a new state administration; and it appears that the county commissioners at that time were able to secure the consent of the State Highway Commission to a compliance with the terms and conditions upon which the bonds were issued. The board, therefore, adopted a resolution for the purpose of re-issuing the bonds which

had been regularly canceled and destroyed as aforesaid. Upon the adoption of the resolution to reissue the bonds, one of the plaintiffs in error, M. E. Trapp, submitted his proposal, or bid, for the purchase of the bonds, which bid or proposal was duly accepted. Immediately thereafter, the plaintiffs brought this action to enjoin the board of county commissioners from issuing and selling the bonds. Several grounds for the injunction were alleged in the petition, but the principal or vital ground, as we see it, was based upon the allegations disclosing the history of the controversy as herein enumerated: that is, that the bonds, although regularly issued, were regularly canceled and destroyed, and that the board of county commissioners was without authority to reconstruct or give new life to a proceeding which had terminated and died pursuant to an express provision of the statute. The county commissioners answered, stating that they acted in good faith in the proceedings relating to the cancellation and the destruction of the bonds; but that they had later learned or reached the conclusion that they acted without authority of law; that their acts in destroying the bonds were void, and that they did nothing more than physically destroy the instruments. Plaintiff in error, Trapp, intervened in the case, and asked to be made a party defendant. Permission was granted him to be made a defendant in the action. He pleaded his contract to purchase the potential bonds, and further alleged that the county commissioners acted capriciously, arbitrarily, and without authority of law in destroying the bonds; and that they destroyed the bonds without taking any evidence of the necessity therefor, and that the pretended reason why the bonds were destroyed never existed, and that a greater reason existed for the application of the proceeds of the bond issue to the construction of roads and bridges at the time the bonds were destroyed than at any other time. The answer also contained an allegation that said sections of the statutes, 8603 and 8604, failed to give the county commissioners authority to destroy bonds, and furthermore contended that the said sections are unconstitutional.

Several other parties intervened also, and filed pleadings similar to the answer of the intervening defendant, Trapp.

Upon a hearing, the court sustained general demurrers to the separate answers of the defendants. The defendants stood upon their demurrers, and the court rendered judgment granting a permanent injunction against the issuance of the bonds. The board of county

commissioners and the intervening defendant, Trapp, appealed from the judgment. In seeking reversal of the judgment of the trial court, they urge three propositions:

First, it is contended that said sections 8603 and 8604 of the statutes, Id., are void for uncertainty; second, that said sections are in violation of section 26, art. 10, of the Constitution; and, third, that the answers in this case disclosed that the county commissioners acted capriciously, arbitrarily, and without evidence, and in bad faith, in canceling and destroying the bond issue aforesaid.

Regarding the first proposition urged, which relates to the certainty or uncertainty of the statutes, we fail to see any uncertainty in the provisions of the statutes either as to the authority of the county commissioners to cancel and destroy bonds under certain conditions, or in the procedure for such purpose.

Section 8603 is a general provision, and provides that when it is determined that the purpose for which bonds were issued has ceased to exist, the county commissioners are authorized to destroy the same, and absolve the county or municipality from liability; and the procedure for accomplishing this purpose is set forth in the following section, which provides for a resolution and at least 14 days' notice in a newspaper, and the posting of copies of the notice in five public places within the municipality; said statute also prescribes the contents and nature of the notice, and that unless formal objection and protest in writing is made by at least one-third of the voters qualified to vote at the election at which the bonds were issued, the bonds will be destroyed by burning. There is nothing indefinite about the language of the statutes.

Even though the statute might lack some specific statement which a painstaking and cautious writer might have employed in drafting it, and which would have added clearness to the text, yet such omission would not by any means vitiate the statute. The rule in this connection is well stated in Lewis' Sutherland, Statutory Construction, vol. 1, sec. 86, as follows:

"It is inevitable that some statutes should come from the hands of the Legislature with imperfections of various sorts. These imperfections may relate to minor matters, such as grammar, punctuation or rhetoric, or they may relate to substantial matters in the form of omissions, ambiguities and contradictions.

It is undoubtedly the duty of a court to so construe a statute as to give it a sensible effect and make it of binding force. A statute cannot be held void for uncertainty, if any reasonable and practical construction can be given to its language."

If possible, statutes will be given a rational construction instead of such a construction as will lead to an absurdity. Therefore, there is no merit in the contention that the statutes have reference to bonds which have been canceled or ordered destroyed by the courts. Bonds or other instruments which have been canceled by a decree of a court need no act, affirmative or otherwise, of the fiscal officers of a municipality, to render these instruments void and of no legal force. Where a court has decreed that bonds are void and orders their cancellation, its mandates are not to be considered so impotent as requiring additional and rather lengthy, complicated proceedings, by a board of county commissioners or the principal officers of some municipality, for the purpose of determining whether or not the court's decree shall be obeyed.

These statutes (sections 8603-8604, Comp, Stat. 1921) are not unconstitutional. Section 26 of art. 10 of the Constitution, is a permissive provision only, and is in its nature a limitation statute, without which provision certain indebtedness cannot be created. This constitutional provision is not an absolute mandate to the people and their officers to create an indebtedness. It serves as a mandate only to define the manner and extent that indebtedness may be incurred or created, and it is not a limitation upon the right of the officers designated by law to cancel, under certain circumstances, the evidence of unnecessary indebtedness, to wit, unused bonds.

Regarding the third proposition, there is nothing in the proceedings nor the answer of the defendants, the board of county commissioners, indicating that they acted arbitrarily or capriciously, or that their acts were in such bad faith as to amount to fraud. On the other hand, their resolution expressly stated that it was impossible to secure the consent of the State Highway Commission to construct the roads in accordance with the requirements under which the bonds were issued; and that they, as county commissioners, were unable to dispose of the bonds except in violation of their agreement and the conditions under and upon which said bonds were issued; and, further, their answer states that they were acting in good faith. The proceedings failed to disclose any arbitrary ac-

tion, and we think the board of county commissioners was within its statutory and constitutional rights in canceling and destroying them. Such action and such proceedings terminated the authority of the board of county commissioners relating to that subject-matter, or rather, that particular bond issue.

The courts can review or interfere with proceedings of administrative bodies, such as the proceedings in the present case, only when their acts are so unfair as to amount to a denial of due process of law, or so arbitrary or oppressive as to amount to fraud. Silberschein v. U. S., 285 Fed. 397; Crawford v. Cassity, 78 Okla. 261, 190 Pac. 412; Tripp v Board of Education (Kan.) 227 Pac. 345; Dixon County v. Field, 111 U. S. 83, 28 L. Ed. 360.

Defendants in error insist that plaintiff in error, M. E. Trapp, was not a proper party to this proceeding. It is unnecessary to determine that question. It is only necessary to say that the intervening defendant Trapp was not a necessary party to the action. That statement rests upon the simplest principle of elementary law. The Supreme Court of the United States, in the case of Cherokee Nation v. Hitchcock, 187 U. S. 294, has passed directly upon this identical question, except the action in that case was to prevent the sale of certain property.

In the first paragraph of the syllabus, the court held that:

"In an action brought by the Cherokee Nation to enjoin the Secretary of the Interior from leasing oil lands held for the benefit of said Nation under section 13 of the Act of Congress approved June 20, 1898, it is not necessary to join as parties defendants the persons or corporations to whom the Secretary proposes to make the leases."

The demurrer to the answer of the board of county commissioners was properly sustained, and judgment was properly rendered against the board enjoining them from ever issuing, or reissuing, the proposed bonds in this action. The plaintiffs were seeking only to restrain the county commissioners from issuing and selling the bonds. They were not concerned as to any action which Mr. Trapp might take in the premises, as it was not claimed that he had any authority of law to create a charge or indebtedness against the county, but was simply intending to purchase the bonds when they were issued. He does not claim in his answer or brief that he was the owner of the bonds or any part thereof, or that he had any

vested rights in the bonds canceled and destroyed. Therefore, as against the plaintiffs in this particular action, whatever rights, if any, plaintiff in error Trapp had, by virtue of his contract to purchase the potential bonds, was not independent of the power of the board of county commissioners to issue the bonds, and such rights with reference to the relief granted plaintiffs necessarily terminated with the situation or condition that prevented the board of county commissioners from issuing the bonds. In other words, even though the language contained in the answer of the intervening defendant Trapp might have stated a defense to the action (if same had been incorporated into the answer of the proper party defendant), he could not become substituted as a party defendant for the board of county commissioners, and interpose a defense for them. With a permanent injunction properly issued against the board of county commissioners enjoining them from issuing the particular bonds, a judgment in favor of the defendant Trapp would have been academic only, and would have served no useful purpose.

For the reason herein set forth, the judgment of the trial court is hereby affirmed.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

ANDREWS and SWINDALL, JJ., dissent.

By the Court: It is so ordered.

---

ANDREWS, J. (dissenting). I am unable to agree with the opinion in this case, and desire to express my reasons for my dissent thereto.

I agree with the law as announced in the first and second paragraphs of the syllabus and disagree with the law as announced in the third paragraph of the syllabus for two reasons: First, in my opinion, it is not a correct statement of the law; and second, the law announced has no application to the facts as shown by the record before this court.

The authority of the county commissioners is limited, and under the provisions of section 26, art. 10, of the Constitution no county shall be allowed to become indebted in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof voting at an election, to be held for that purpose. An election was called by the board of county commissioners pursuant to a resolution, and the purpose of the call was dis-

closed in the caption and body thereof. In the caption the proposition was stated to be:

"* * * For the Purpose of Constructing Bridges and Permanent County Roads,"

—and in the body of the resolution the purpose was shown in the proposition to be voted on, as follows:

"* * * for the purpose of, in conjunction with an equal amount of federal or state aid, constructing permanent roads and bridges. * * *"

The proclamation for the election and the ballot submitted to the voters stated the purpose in the language of the resolution.

A constitutional majority of the voters voted favorably to the proposition submitted, and the bonds were issued.

The county commissioners were unable to procure from the State Highway Commission an equal amount of federal or state aid, and believing, as stated by the plaintiffs in their petition,

"* * * that the board of county commissioners of Garvin county, Okla., were authorized to issue said bonds, only in strict conformity with the provisions of said election proclamation and said resolution hereto attached"

—passed a resolution in words and figures as follows:

"Second Resolution for Destruction July 7th, 1926.

"Resolution of the board of county commissioners of Garvin county, Okla., relating to the cancellation and destruction of the $720,000 road bond issue of Garvin county, Okla.

"Whereas, heretofore at an election duly called and had in Garvin county, Okla., the county commissioners of Garvin county, Okla., were authorized by vote at said election to issue $720,000 worth of negotiable bonds of the county for the construction of certain roads and said bonds have been heretofore issued, signed and approved and are ready to be sold; and,

"Whereas, said bonds were voted and authorized to be sold only upon condition that the amount to be expended on the different roads contemplated by the bonds issued, be matched and met by an equal amount of state or federal aid to be used in the construction of said roads, and the county commissioners are not authorized to sell said bonds except upon such contingencies; and,

"Whereas, a part of said proceedings in the issuance of said bonds by resolution of said board of county commissioners it is provided that the said funds should be apportioned to certain roads beginning with certain designated roads and ending with the north and south road through Pauls Valley,

and the funds to be derived from said bond issue to be apportioned according to the said resolution of the county commissioners; and,

"Whereas, the board of county commissioners of Garvin county, Okla., have heretofore on numerous and divers occasions attempted to secure proposals from the State Highway Commission for the purpose of meeting the requirements of the said bond issue, and the resolution of this board, to the end that said bonds might be disposed of and said moneys expended in accordance with said resolution of this board and the said State Highway Commission had announced as its intention not to meet and match said funds, except in certain instances; and,

"Whereas, it has become impossible to secure a compliance by the State Highway Commission with the conditions under which said bonds were issued, and we as county commissioners are authorized to dispose of said bonds, unless it be done in violation of said resolution and the agreement and conditions under which said bonds were issued; and,

"Whereas, the board of county commissioners have made repeated trips to interview the State Highway Commissioners, and have expended much time, labor and effort in their endeavor to secure some favorable action by the State Highway Commission by which the conditions under which said bonds were voted could be met, but have been wholly unable to do so, and it now appears wholly impossible for the conditions under which said bonds were voted to be met and the county commissioners are unauthorized to sell said bonds under the circumstances, and it appears that such conditions cannot and never will be met; and,

"Whereas, we have been petitioned by many of the voters of Garvin county, Okla., and we believe a majority of the voters of said county under the conditions as they now exist are in favor of the cancellation and destruction of said bonds:

"Now, therefore, be it resolved by the board of county commissioners of Garvin county, Okla., in regular session, that the said road bonds of the par value of $720,000 together with the coupons attached thereto be, and the same are hereby canceled, set aside and held for naught, and all acts of the board of county commissioners in issuing said bonds, be, and the same are hereby set aside and held for naught, and said bonds be and they are hereby declared to be of no force and effect, and are wholly canceled and destroyed and that the county treasurer of Garvin county, Okla., be required to forthwith secure said bonds and present said bonds to the board of county commissioners in the city of Pauls Valley, and is hereby directed and instructed to cancel said bonds and cause the same to be marked canceled by order of the board of county com-

missioners to the end that said obligation may be wholly canceled and discharged as obligations of Garvin county, Okla.; and,

"Be it further resolved that the record of said cancellation be made, showing the time, place and the manner of the cancellation of same, and that the board of county commissioners cause notice in writing to be served upon the county treasurer when and where to produce said bonds, to the end that the same may be wholly destroyed in the presence of said board and a proper record thereof made.

"Dated this 7th day of July, 1926.

"C. A. Rotenberry
"Ernest Kimberlin
"S. M. Muse
"R. Roquemore, County Clerk.

"Filed July 7, 1926."

—and after notice given proceeded to destroy the bonds that had been issued.

The first question presented by the record is, Did the county commissioners have authority to destroy these bonds? The second is, Did the county commissioners conform to the statutory requirements for the destruction of bonds?

The only authority claimed for the destruction of the bonds is that contained in sections 8603 and 8604, C. O. S. 1921. I agree with the law announced by the Commissioner's opinion that these sections are constitutional and that pursuant thereto the board of county commissioners has authority to destroy bonds. But when that authority is asserted and bonds are destroyed pursuant thereto the provisions of the statute authorizing the destruction must be followed.

Section 8603, Id., provides that bonds may be destroyed when "* * * it is determined that the purpose for which said bonds were issued has ceased to exist. * * *" It appears to me that in the case of county bonds, that determination is required to be by the board of county commissioners. Under the provisions of section 8604, Id., the determination must be "* * * by resolution, * * *" and the resolution must "* * * declare that the purpose for which said bonds were issued has ceased to exist. * * *"

The resolution passed by the board of county commissioners, which has been hereinabove quoted, nowhere declares that the purpose for which said bonds were issued has ceased to exist.

That instrument recites the issuance of the bonds; that the bonds were

"* * * to be sold only upon condition that the amount to be expended on the different roads contemplated by the bonds issued, be matched and met by an equal amount of state or federal aid to be used in the construction of said roads, and the county commissioners are not authorized to sell said bonds except upon such contingencies. * * *"

—that the said State Highway Commission had announced its intention not to meet and match said funds; that it was impossible to secure a compliance of the State Highway Commission with the conditions under which said bonds were issued; that the county commissioners were unauthorized to dispose of the bonds unless it was done in violation of the conditions under which the bonds were issued, and that it now

"* * * appears wholly impossible for the conditions under which said bonds were voted to be met and the county commissioners are unauthorized to sell said bonds under the circumstances, and it appears that such conditions cannot and never will be met. * * *"

—wherefore, the board of county commissioners determined by the resolution that the bonds should be canceled, set aside, and held for naught.

It nowhere appears, either in that resolution or elsewhere, that the board of county commissioners determined that the purpose for which these bonds were issued had ceased to exist. The most that can be said of that resolution is that it determined that the bonds could not be sold.

The statute does not authorize the destruction of bonds for the reason that they cannot be sold. The statute authorizes the destruction of bonds when the purpose for which they were issued has ceased to exist. So I say that, while the board of county commissioners had authority to determine by resolution that the purpose for which the bonds were issued had ceased to exist, and, thereafter, destroy the bonds, the board of county commissioners did not make that determination required by the statute, and that in the absence thereof there was no authority to destroy these bonds. The board of county commissioners is not a judicial tribunal with powers to interpret statutes of the state, whose decisions have a conclusive effect. Board of County Commissioners v. Eastern Oklahoma Publishing Co., 120 Okla. 122, 250 Pac. 496; Board of County Commissioners of Kay County v. Smith, 47 Okla. 184, 148 Pac. 111.

I must conclude that there was no compliance with the statutory authority, and therefore no authority to destroy the bonds.

It must be kept clearly in mind that this case came to this court on a transcript from

an order sustaining a demurrer to the answer of the board of county commissioners and a judgment rendered thereon. The record shows that the defendants elected to stand on their answers after the demurrers were sustained, and that the judgment was rendered without evidence.

What is the effect of a demurrer? Under the rule announced and followed by this court over a long period of years, a demurrer to an answer admits the truth of all facts properly pleaded therein with all the inferances which can reasonably be drawn or indulged in behalf of the answer. A demurrer to an answer may be sustained only where the pleading is so defective that the court is authorized, considering all of the facts therein properly pleaded as admitted, to conclude that no defense is stated. Hall v. Smith, 126 Okla. 206, 259 Pac. 537; Wilson v. Hornecker, 119 Okla. 120, 249 Pac. 317.

The answer of the board of county commissioners to which the demurrer was sustained in this case denies

"* * * generally and specifically each and every, all and singular the allegations and statements of fact contained therein, except such as might be hereinafter specifically admitted."

That answer admitted the resolution calling the election and the resolution for the cancellation of the bonds. The answer further stated:

"* * * that their reason in the cancellation and destruction of said bonds was that the purpose for which said bonds were voted had ceased to exist and that the real reason for the cancellation and destruction of said bonds was that these defendants were wholly unable to secure a satisfactory agreement with the State Highway Department of the State of Oklahoma with regard to the matter of funds so that the roads and bridges could be constructed as provided in said election proclamation. These defendants further state that at the time of the passage of the resolution authorizing the cancellation of said bonds to the effect that it was impossible for said roads to be constructed as provided in said election proclamation was the inability of said defendants to secure an agreement or arrangement with the State Highway Commission for the matching of certain funds derived from said bond issue with state and federal aid"

—and that since the 1st day of January, 1927,

"* * * a satisfactory agreement and arrangement has been perfected with said commission whereby the funds to be derived from the sale of said bonds can be matched with state and federal aid as provided in the said election proclamation and that the roads set out and described in said election proclamation can be constructed as provided therein and that substantial compliance with all the terms of said election proclamation can be had."

There was the further allegation in the answer:

"For further answer to said petition these defendants allege and state that at the time of the passage of their resolution authorizing the cancellation and destruction of said bond issue that they were in good faith and believed at that time that it would be impossible to secure a satisfactory arrangement or agreement with the State Highway Department whereby the funds derived from the sale of said bond issue could be matched with state and federal aid as provided in said election proclamation and that was the sole and only reason for their action authorizing said cancellation and destruction"

—and

"* * * they desire to put into execution the will of the people as manifested in said bond election and that the necessity for the building and construction of the roads and bridges specified in said election proclamation is apparent and acute at this time and if the court is of the opinion that they should be allowed to proceed with the sale of said bonds and the construction of said roads and bridges they will do so at the earliest possible date and complete said construction as rapidly as possible in accordance with the specifications of said election proclamation and according to the will of the people as shown by the result of said bond election."

I am unable to agree with an opinion that holds that the facts stated in this answer, which were admitted by the demurrer to be true, did not constitute a complete defense to this action.

The resolution providing for the cancellation of the bonds may be ambiguous, but when construed in connection with the admitted facts as shown by the record, I can come to no conclusion other than that the board of county commissioners canceled these bonds because they could not sell them without first obtaining an equal amount of money from state or federal aid, and that it was not their intention to and they did not cancel the bonds because the purpose for which they were issued had ceased to exist. The purpose for which these bonds were issued was to procure funds with which to build county roads and bridges. The record shows that the need for the construction of county roads and bridges was

more urgent at the time of the passage of the resolution for cancellation of the bonds than it had ever been.

The opinion in this case can be justified only on the theory that the people of Garvin county authorized the issuance of these bonds for the purpose of securing state and federal aid. I do not believe that that was their purpose, and the admitted facts shown in the record deny that to be the purpose.

In my opinion the trial court committed reversible error in sustaining the demurrer to the answer of the board of county commissioners and rendering judgment for the plaintiffs.

I am authorized to state that Mr. Justice SWINDALL concurs in this dissenting opinion.