DOWELL, County Supt., v. BOARD OF ED. OF OKLAHOMA CITY.

No. 28295.     May 24, 1939.

Rehearing Denied June 27, 1939.

Mastin Geschwind, for plaintiff in error.

Ed. M. Box and R. J. Watson, for defendants in error.

HURST, J. This action was commenced in the trial court by the board of education of the city of Oklahoma City seeking a writ of prohibition and injunction to restrain Ethel F. Dowell, county superintendent of public instruction of Oklahoma county, from proceeding further in the matter of detaching a part of the Oklahoma City school district, an independent district, and creating a new common school district out of the portion sought to be detached. The trial court granted the writ and the county superintendent brings this appeal.

There is no dispute about the facts. On February 25, 1937, the immediate predecessor of Ethel F. Dowell in the office of the county superintendent of Oklahoma county made an order attaching a certain adjacent common school district to the independent school district of Oklahoma City. The act in force at that time governing such procedure was section 6860, O. S. 1931 (70 Okla. St. Ann. sec. 182). It provided, so far as material here, in substance that territory outside the limit of an independent school district may be added to or detached from such district upon the presentation to the county superintendent of a petition signed by a majority of the qualified electors of the territory desiring to be attached or detached, and then if the county superintendent shall "deem it proper and to the best interests of the school of such city or town," he shall issue an order attaching or detaching such territory. Pursuant to this provision the circulation of a petition was commenced about March 15, 1937, which was subsequently, on July 16, 1937, presented to Ethel F. Dowell, who had succeeded to the office of county superintendent. On that date she made an order, corrected by a subsequent nunc pro tunc order, detaching from the independent district of Oklahoma City that portion which had previously been attached, finding it to be for the best interests of the school system of both the independent district and the territory sought to be detached there-

from, and gave notice of her intention to form a common school district out of the territory so detached.

In the meantime, however, while the petition was in the process of circulation, art. 9, ch. 34, S. L. 1937 (70 Okla. St. Ann. sec. 182), was enacted with an emergency provision thereon and approved May 24, 1937. In so far as material here, the amended act provides:   :

"Territory outside the limit of any city or town within an independent district may be added to such city or town for school purposes, upon petition to the county superintendent of public instruction by a majority of the qualified electors of the territory desiring to be attached to such city or town and by a majority of a special meeting of the legal voters in the territory petitioning to be attached to the independent district, summoned by the county superintendent and voting by secret ballot on ballots furnished by the county superintendent, who shall issue an order attaching such territory to such city or town for school purposes. * * *"

It will be observed that the 1937 law eliminates all reference to "detaching" territory, which had been authorized by the prior law, and it also eliminates the provision, previously existing, giving the county superintendent authority to issue an order attaching or detaching territory sought by petition only if he shall deem it proper and to the best interests of the independent district. It is not doubted that if the 1937 act is constitutional and in force at the time the county superintendent attempted to make the order in question, she exceeded her authority and the trial court was correct in granting the writ.

1. The county superintendent first contends that this action was brought by the governing board of the independent school district on its own behalf as a body of individuals, and that they are not the proper party entitled to maintain this action, since the school district itself as a corporate entity is the real party in interest.

Section 6861, O. S. 1931 (70 Okla. St. Ann. sec. 183), provides that "the public schools of each city or town organized in pursuance of this article shall be a body corporate and shall possess the usual power of corporations for public purposes, by the name and style of 'The Board of Education of the city or town of _____, of the State of Oklahoma', and in that name may sue or be sued. * * *"

Petitioner alleged that "your petitioner,

Board of Education of the City of Oklahoma City, State of Oklahoma, is the governing board of the Oklahoma City Independent School District, a regularly organized independent school district, existing under and by virtue of the laws of the State of Oklahoma."

We think from a reading of the petition it is the plain intention that the action be one by the district, and not by the board as a separate group of private individuals, regardless of the inapt language used. The private individuals referred to are nowhere named and the board as an entity is the school district for the purposes of suit. It is not questioned that the district had the right to maintain this action. Board of Education of the City of Lehigh v. Calvert (1933) 162 Okla. 121, 19 P.2d 359.

2. The county superintendent contends that the 1937 act is unconstitutional for many reasons. Objection is made to the sufficiency of the title of the act, but it has heretofore been held sufficient in Musick v. State (1938) 185 Okla. 14, 90 P.2d 631. See rule stated in Cornell v. McAllister (1926) 121 Okla. 285, 249 P. 959. Objection is also made to a portion of the act, not quoted above, giving the county superintendent power to apportion bonded indebtedness in connection with attachment of territory. However, in Musick v. State. supra, we held that provision of the act separate from the remainder of the act, and even if unconstitutional it would not render the other provisions of the act invalid. See rule stated in Re Sprankle (1917) 69 Okla. 178, 170 P. 1147. The apportionment of the indebtedness is not now before us, and we are not called upon to consider this contention. We shall now consider the contentions made which do not appear to have been heretofore specifically discussed.

(a) It is contended that the language of the act is so ambiguous, vague, and indefinite that it is unenforceable and void. But we do not think there is any merit to this contention. It is the duty of the court to so construe a statute as to give it a sensible effect. A statute should not be held void for uncertainty, if any reasonable and practical construction can be given to its language. Trapp v. Dykes (1929) 140 Okla. 63, 282 P. 882. See 59 C. J. 601, et seq. We do not see anything vague and uncertain in what the Legislature has attempted to do. A petition is signed by a majority of the qualified electors in the territory sought to be attached, and pre-

sented to the county superintendent. The county superintendent then "summons" the legal voters of such territory for a special meeting, and those present vote by secret ballot furnished by the county superintendent. If a majority of those voting at the special meeting favor attachment the county superintendent shall issue an order of attachment. But it is argued that the act does not provide how the intended class shall be "summoned," where or when the meeting shall be held, and how the giving of proper notice shall be ascertained and proved. In determining the legislative intent, it is a cardinal rule of construction that the act under consideration must be considered together with all other enactments upon the same subject. Oklahoma Natural Gas Co. v. Corporation Commission (1923) 90 Okla. 84, 216 P. 917; Oklahoma Coal Co. v. Atkinson (1926) 121 Okla. 59, 247 P. 366; 25 R. C. L. 1060. Section 6786. O. S. 1931 (70 Okla. St. Ann. sec. 66), provides the manner of giving notice of both annual and special meetings of "each school district," and provides that such notice shall state, among other things, the place where the meeting shall be held. Also section 6827, O. S. 1931 (70 Okla. St. Ann. sec. 128) provides the manner for calling "any regular or special meeting of the voters of any school district in the state of Oklahoma." It is true that these provisions contemplate a meeting of an entire school district and not a fraction thereof, but so far as concerns the manner of giving notice of "summoning" the voters and fixing the place of the meeting, they can consistently be made applicable to the present act when construed together. We must, therefore, assume that such was the intent of the Legislature.

(b) It is contended that the act under consideration is unconstitutional in that it "provides for depriving the independent school district affected of its property without due process of law." The argument is that the act gives the voters of the independent district no voice on the question of annexation of territory thereto, and further that the right of appeal provided for therein is ineffective inasmuch as the action of the county superintendent is purely ministerial and no appeal lies when his acts are purely ministerial, citing In re Consolidation of School Dists. Nos. 14 and 20 (1937) 180 Okla. 271, 69 P.2d 365.

· But the voters of the independent district are not divested of any property rights by the addition of territory to their school district or a change in such district. A school district is a subordinate agency of the state, and the Legislature can abolish them or change their boundaries without consulting the inhabitants. School Dist. No. 17 v. Zediker (1896) 4 Okla. 599, 47 P. 482. The individuals have no property rights in them, and thus the failure to give the inhabitants of the independent district a voice in the matter or to provide for an appeal is not a fatal defect. See Fowler v. Green (1918) 73 Okla. 319, 176 P. 222; People v. Lukenbill (1924, Ill.) 145 N. E. 294.

(c) We think the contention that warrants the most serious consideration is that the act in question is unconstitutional on the ground that it attempts to delegate legislative power to private individuals. It will be noted that the 1937 law provides that a number of petitioners who shall constitute a majority of the qualified electors in an undefined area may require the county superintendent to call a meeting and upon a majority vote of those same electors in the area desiring to be attached, it becomes the mandatory duty of the county superintendent to issue an order attaching such territory. The county superintendent has no discretion in the matter. Musick v. State, supra.

Plaintiff in error relies on Rowe v. Ray (1930, Neb.) 231 N. W. 689, 70 A. L. R. 1056 (annotation p. 1062); City of Hutchinson v. Leimbach (1903, Kan.) 74 P. 598, and other cases from Kansas of the same import sustaining the proposition that the fixing of the boundaries of a school district, or drainage district, is a legislative function and that where a statute leaves the fixing of boundaries to private individuals, without the act itself providing for such boundaries or leaving discretion in a subordinate official or board to be exercised according to a prescribed guide or standard, it will be invalid as an attempt to delegate such legislative function to private persons.

If the fixing of the boundaries of a school district is exclusively a legislative function, the contention made is correct under the authorities cited. However, with respect to municipalities and other political subdivisions of the state, there is a recognized exception to the accepted canon of constitutional law prohibiting the delegation of lawmaking power. "It does not", it is said, "forbid the enactment of laws delegating to the people of local subdivisions of the state the decision of questions concerning them alone." 12 C. J. 842, sec. 324. See general principles stated and

cases collected in 12 C. J. 857, sec. 356 et seq. In Cooley's Const. Lim. (8th Ed.) pp. 389, 390, it is said that the right of the Legislature to create inferior municipal organizations and confer upon them the powers of local government will always pass unchallenged on the theory that "the Legislature in these cases is not regarded as delegating its authority, because the regulation of such local affairs as are commonly left to local boards and officers is not understood to belong properly to the state. * * *" See, also, 1 McQuillin, Municipal Corporations (2d Ed.) secs. 91, 93, 148.

A school district is a quasi-municipal corporation (1 McQuillin, Municipal Corporations, 2d Ed., sec. 137, and it is undoubtedly under the theory just stated that the Supreme Court of Wisconsin in State v. Auer (1928) 221 N. W. 860, said that "the formation of school districts, * * * is not a direct legislative function."

Whatever may be the views elsewhere expressed, we think it is now established in this jurisdiction that the fixing of the boundaries of a school district is a purely local affair which may be left to the will of the people under a general law providing for the creation of school districts throughout the state. Section 6915, O. S. 1931 (70 Okla. St. Ann. sec. 251), providing for the formation of consolidated school districts, is identical with the act under discussion so far as the delegation of the power to fix boundaries is concerned. Under that section a consolidated district may be created from two or more adjacent school districts "or parts of districts or territory" at a special meeting of the voters of such districts "or parts of districts or territory," and upon a majority vote, the district is created and the boundaries determined by the electors. See State v. Smith (1930) 142 Okla. 264, 286 P. 805. As in the act in question, the county superintendent under the consolidated school district law has no discretion in the matter, but his action is purely ministerial, and no appeal lies therefrom. In re Consolidation of School Dists. Nos. 14 and 20, supra. In Robinson v. Thorpe (1931) 147 Okla. 150, 295 P. 603, in discussing the consolidated school district law, we said:

"The Legislature has not seen fit to prescribe a maximum area for consolidated school districts in the exercise of the functions of the government, but has left this question for determination to the wisdom and discretion of the electors in any proposed consolidated school district."

So also it is said in the case of In re Consolidation of School Dists. Nos. 14 and 20, supra, that "the order of the county superintendent did not change the boundary of any school district; that had been accomplished by the people when they voted for consolidation."

It is true that section 1, art. 13, of our Constitution provides that "the Legislature shall establish and maintain a system of free public schools wherein all the children of the state may be educated," and that accordingly it is held that "the free public school system which the Legislature is directed to establish by article 13 of the Constitution is a matter of general state concern, and not a municipal affair." Board of Education of City of Ardmore v. State (1910) 26 Okla. 366, 109 P. 563. Such also is the holding in Olson v. Logan County Bank (1911) 29 Okla. 391, 118 P. 572; Oklahoma Ry. Co. v. St. Joseph's Parochial School (1912) 33 Okla. 755, 127 P. 1087; Thurston v. Caldwell (1913) 40 Okla. 206, 137 P. 683; State v. Cummings (1915) 47 Okla. 44, 147 P. 161; State v. Ross (1919) 76 Okla. 11, 183 P. 918. But it is important to notice that the Constitution refers to "free public schools", and not "school districts", and in none of the cited cases is it indicated that the constitutional provision is intended to refer to the establishment of school districts. We think the correct interpretation of this constitutional provision is that it refers to the regulation of the schools themselves with reference to grades, educational facilities and the like, and not to the creation of districts. Such was the construction placed upon an almost identical constitutional provision by the Supreme Court of Wisconsin in State v. Auer, supra.

Therefore, since the fixing of the boundaries of school districts is purely a local affair, the delegation of that power to the people does not render the act unconstitutional.

3. The county superintendent further contends that even if the 1937 act in question is constitutional, it did not go into effect until 90 days after the adjournment of the Legislature at which it was passed, making the effective date August 10, 1937, which is after the issuance of the order of detachment herein involved.

Section 58, art. 5, of the Constitution provides in part:

"No act shall take effect until ninety days after the adjournment of the session at which it was passed, * * * unless, in case of emergency, to be expressed in the

act, the Legislature, * * * so directs. An emergency measure shall include only such measures as are immediately necessary for the preservation of the public peace, health, or safety, **and shall not include * * * provision for the * * * encumbrance of real property for a longer term than one year. * * *"**

The act in question contains an emergency provision, entitling it to become effective on May 24, 1937, when it was approved by the Governor, but it is contended that such emergency measure is a nullity for the reason that it provides for an encumbrance of real property for a longer period than one year. The act provides that territory annexed to an independent school district shall assume only such portion of the existing bonded indebtedness of the independent district as may be determined by the county superintendent to be a proper proportion under any proposal submitted by the school district board of the independent district. The argument is that generally independent school districts have bonded indebtedness payable over a period of years, which constitutes an encumbrance on the property of the district, and therefore the provision that territory annexed under this act shall assume a proportion of such bonded indebtedness is a provision for the encumbrance of real property for a longer term than one year.

But even assuming that there will be such bonded indebtedness at the time of annexation which does not mature until more than a year after the annexation, nevertheless we do not think the assumption of such indebtedness creates an encumbrance on real property for more than a year within the meaning of the constitutional provision. The bonded indebtedness created by school districts is by authority of section 26, art. 10, of the Constitution. It provides that the school district incurring any indebtedness requiring a vote of the people shall "provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same." It does not provide that the indebtedness so incurred shall become a lien against the property, as in the case of street improvements for cities and towns and improvements in drainage districts. It

simply requires the levy of a tax each year for the purpose of retiring the indebtedness. With respect to the encumbrance of the property the tax is no different from one levied each year for general revenue purposes. In Oklahoma City v. Shields (1908) 22 Okla. 265, 100 P. 559, it was said that a revenue or tax bill does not create an encumbrance for a term longer than one year within the meaning of this constitutional provision even though upon default it is made a perpetual lien against the property, on the theory that it will be presumed that the tax will be paid within the year for which it is levied. The same is true here. If the taxes are paid each year, and it is presumed that they will be, the issuance of bonds by the school district may never become an encumbrance upon the property for a term longer than one year. It is argued, however, that the obligation to make annual levies is part of the contractual obligation of the bond, and therefore this is different from a general revenue bill. But the obligation to make annual levies does not create an encumbrance upon the property. It appears from the opinions in Oklahoma City v. Shields, supra (dealing with an act for paving improvements in cities and towns), and Riley v. Carrico (1910) 27 Okla. 33, 110 P. 738 (dealing with an act creating drainage districts), relied on by the county superintendent, that the acts there involved expressly provided for the creation of a lien or encumbrance on real property for a term longer than one year. Thus, those decisions are not in point here.

We conclude, therefore, that the act in question became effective on May 24, 1937, which was prior to the order of detachment here involved and was in force at the time the petition was filed and the order made.

4. The remaining contentions made by the county superintendent need not be considered, for the reason that they are based upon the premise that the 1937 act was not effective when the order attempting to detach the territory was made.

Judgment affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, GIBSON, DAVISON, and DANNER, JJ., concur. RILEY, J., absent.