J. IVAN HALSTEAD ET AL., APPELLANTS, V. STEVE ROZMIAREK ET AL., APPELLEES.

94 N. W. 2d 37

Filed January 16, 1959. No. 34467.

*Beatty, Clarke, Murphy & Morgan, Donald W. Pederson, Frank E. Piccolo, Jr.,* and *Roy E. Blixt,* for appellants.

*Baskins & Baskins,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Baker rural high school district of Logan County, a Class VI school district, hereafter referred to as Baker district, is composed of 13 Class I elementary grade school districts of Logan County and 2 Class I school districts of McPherson County. The Class I school districts of Logan County mentioned above include school districts Nos. 4 and 5. School district No. 89 of Custer County is a Class III school district which maintains a school of elementary and high school grades under the direction of a board of education. It has within its boundaries the incorporated village of Arnold where its school is located and conducted. School district No. 89 of Custer County, designated herein District 89, and school districts Nos. 4 and 5 of Logan County, spoken of hereafter as districts 4 and 5, are adjoining school districts.

More than 55 percent of the legal voters of districts 4 and 5 and the board of education of district 89 filed identical petitions in manner and form as provided by law with the county superintendent of Logan County and the county superintendent of Custer County for a change of the boundary of district 89 to include therein all the territory within the school district boundaries of districts 4 and 5. There was no petition filed with the county superintendents of the counties by any of the legal voters residing outside of districts 4 and 5 but located within the other 13 school districts within the Baker district and no list of all the legal voters of Baker district, properly sworn to, was filed with the county superintendent of either Logan County or Custer County.

A hearing was called, notice thereof was given, and a joint hearing was held June 29, 1957, by the county superintendents as the law requires. The county superintendents disagreed. The county superintendent of Logan County on July 26, 1957, found that there was no petition signed by 55 percent of the legal voters of the Baker district filed in the proceeding asking for the

change of boundaries requested; that to grant the changes in school district boundaries desired would be to remove part of the territory from the Baker district, to wit:   Districts 4 and 5, which would affect Baker district without a petition signed by 55 percent of the legal voters of it requesting such change in school district boundaries; that there was not filed a petition signed by 55 percent of the legal voters of each school district affected as required by section 79-402, R. R. S. 1943; that there was no jurisdiction conferred and no mandatory duty imposed by said section to grant the changes in school district boundaries requested; and that the changes of school district boundaries requested by the petitions filed should be denied.   He entered an order denying the changes of school district boundaries requested by the petitions filed.   The county superintendent of Custer County on June 29, 1957, found that to grant the changes in the boundaries of district 89 to include the boundaries of districts 4 and 5 as requested would remove from Baker district some of its territory but would not disturb or affect its internal affairs; that the Baker district had no interest in the integrity or continuance of its boundaries; that it was not a school district affected by the requested change of boundaries within the meaning of section 79-402, R. R. S. 1943, and no petition from the electors of Baker district was required; that the petitions filed were legal and sufficient; that jurisdiction was thereby conferred upon the county superintendents of the counties; that the county superintendents were under mandatory duty to grant the changes in the school district boundaries of district 89 to include therein the territory then within the boundaries of districts 4 and 5; and that the petitions should be and they were granted.

Appellants filed a petition in error and prosecuted error proceedings in the district court of Logan County from the action of the county superintendents and in particular the findings and judgment of the county

superintendent of Logan County which determined that the county superintendents did not have jurisdiction to act in the premises because 55 percent of all the electors of Baker district did not sign petitions requesting a change of the boundaries of district 89.

The district court found that the county superintendents of Logan and Custer Counties were without jurisdiction to act upon the petitions of school districts 4 and 5 and the board of education of district 89 because there was no petition signed by 55 percent of all the electors of Baker district residing outside the territory of districts 4 and 5 and that the Baker district would be affected by the change in the boundaries of district 89 as requested by the petitions of the board of education of district 89 and districts 4 and 5. A judgment of dismissal of the petition in error of appellants was rendered and the motion for a new trial was denied. This appeal tests the correctness of the action of the district court.

There is no issue of fact in this case. The problem presented by it is a determination of the meaning of statutory language. Specifically it is whether or not Baker district is a "district affected" by a change in its boundaries and a transfer of the territory now within districts 4 and 5 to and its inclusion in district 89. The petitions which originated this proceeding were filed with the county superintendents in May and June, 1957. The applicable statute is section 79-402, R. S. Supp., 1955, and the relevant parts thereof are: "The county superintendent shall * * * change the boundaries of any district upon petitions signed by fifty-five per cent of the legal voters of each district affected. * * * Provided, changes affecting cities, villages, or Class III school districts may be made upon the petition of the school board or the board of education of the district or districts affected. Before the county superintendent authorizes any changes as provided for in this section, the county superintendent must fix a date for hearing and give all interested parties an opportunity to be heard

at such hearing. * * * Territory may be annexed to a district from an adjoining county when approved by the county superintendent of each of the counties involved." That language not only authorizes territorial changes in school districts but is a mandate that it must be done when legal petitions therefor are presented to the proper officer or officers. School Dist. No. 49 v. Kreidler, 165 Neb. 761, 87 N. W. 2d 429, declares: "When the record of proceedings before such county superintendents in a proper hearing by them upon petitions filed under section 79-402, R. S. Supp., 1955, discloses that the legal voters of the districts involved have severally signed and filed proper petitions requesting * * * a change of boundaries thereof, such superintendents, acting multilaterally and not unilaterally, have jurisdiction and the mandatory duty to order the changes requested by such petitions * * *."

If words of a statute are of doubtful meaning, they will be interpreted in a manner which will best effect the purposes of the enactment in preference to one which will defeat it. The intention of the Legislature when ascertained will prevail over the literal sense of the words used and this is especially true when the strict letter of the law would lead to injustice or absurdity. In interpreting a statute the legislative intent may be found from the reason of the enactment. Roy v. Bladen School Dist. No. R-31, 165 Neb. 170, 84 N. W. 2d 119.

A review of the school laws of the state is convincing that it is an object of the state to provide a simple and effectual method of rearranging, reorganizing, and consolidating school districts for the purpose of discontinuing minor, unsatisfactory, and expensive school districts and to replace them with more economical, less numerous, and more desirable organizations as a means of securing an advanced and improved educational system. The purpose of the statute important to this case represents a part of the effort of the state to that end. In Roy v. Bladen School Dist. No. R-31, *supra,* this court said:

"The Legislature has placed great emphasis upon the reorganization and consolidation of numerous inefficient and costly small school districts. Bladen and Campbell districts are two examples of that forward progress in eliminating Class I elementary rural school districts which contract with other districts for elementary education and obtain free high school education elsewhere." It is permissible to recognize the pertinent public policy of the state in finding the intention of the Legislature in regard to whether or not 55 percent of all the legal voters of a rural high school district having substantially the area of a county must sign and present petitions before one or more Class I school districts therein may by petition of legal voters therein join across county lines or otherwise with another school district with its consent and concurrence for both high school and grade school advantages. It is contended that it was the legislative intention that as a prerequisite of districts 4 and 5 being able to join district 89 as a part of it, both for grade and high school purposes, 55 percent of the legal voters of the Baker district which is comprised of 13 Class I districts in that county and 2 districts of that class in McPherson County, none of which have any interest in the schools of districts 4 and 5 and district 89, must petition and consent to a change of the boundaries of district 89. It is more probable that the intention of the Legislature was that the legal voters of districts 4 and 5 had the right to decide whether or not the grade schools of these districts should be discontinued and the area of the districts should become part of district 89 with its consent and concurrence. It is difficult to be convinced that the Legislature intended that 46 percent of the legal voters in practically the whole of Logan County with the addition of 2 grade school districts in McPherson County could control the school affairs of districts 4 and 5 and compel them to maintain a school in each of those relatively small districts for elementary instruction only and that they might not have the more

desirable school opportunities both as to grade and high school offered to them in district 89. Baker district furnishes only high school instruction. If districts 4 and 5 are discontinued and the area of them is made a part of district 89, the children of school age therein will have available to them in a single school educational opportunities in the lower and high school grades. The taxpayers in what are now districts 4 and 5 will contribute taxes in that event to support but one and not three schools as they are now required to do. If the territory of districts 4 and 5 cannot be included in district 89 until 55 percent of the legal voters in the whole of Logan County and two school districts in McPherson County petition therefor, it will never be accomplished. It is too much to expect that more than a few, if any, voters in Baker district outside of districts 4 and 5 could be found who would petition for the detachment of the territory of those two districts from Baker district and the inclusion of the territory in district 89. If the meaning of section 79-402, R. S. Supp., 1955, is as appellees contend, then the statute in this and all similar instances defeats itself. In School Dist. No. 49 v. Kreidler, *supra*, a very technical objection was interposed to prevent alteraton of the boundaries of school district No. 49 from being changed to include the territory of several other districts. The following statement from that case is appropriate and persuasive: "To hold otherwise would deny the legal voters of the districts involved their clearly expressed desires to become a part of district 49, and would place an insurmountable technical obstacle in the progressive creation of new districts from other districts and the changing of boundaries of districts under plain statutes duly enacted for such purposes."

The manner in which Baker district would be affected by the change in school district boundaries proposed in this proceeding, as pleaded by appellees, is that the change would remove districts 4 and 5 and the territory

thereof from Baker district with a resulting decrease in the amount and value of taxable property within it and an increase in the tax burden upon the property remaining within that district.

A school district is a creature of statute designated a body corporate, possessed of the usual powers of a corporation for public purposes as a convenient agency for exercising the authority that is entrusted to it by the state. § 79-401, R. R. S. 1943; State ex rel. School Dist. of Grand Island v. Board of Equalization, 166 Neb. 785, 90 N. W. 2d 421. Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566, speaks of and treats a school district as a municipal corporation: "Questions of public policy, convenience, and welfare, as related to the creation of municipal corporations, such as counties, cities, villages, school districts, or other subdivisions, or any change in the boundaries thereof, are, in the first instance, of purely legislative cognizance and, when delegated to any public body having legislative power, any action in regard thereto does not come within the due process clause of either the state or federal Constitutions."

In reference to the assertion of appellees that the proposed change of boundaries would affect the Baker district because it would deprive it of a part of its territory and this would result in a decrease of the amount and value of the taxable property in the district and would cause an increase of the tax burden upon the remaining property therein, it may be appropriately said that notwithstanding the statute provides that a school district is a body corporate, possesses the usual powers of a corporation for public purposes, and may sue and be sued, it is the firmly established law of this state that a school district may not maintain an action involving a change in the boundaries of a school district. A school district in this state has no territorial integrity. It is subject to the reserve power of the state exercised through administrative authority to change its territory

according to current educational needs and good educational principles. The state may change or repeal all powers of a school district, take without compensation its property, expand or restrict its territorial area, unite the whole or a part of it with another subdivision or agency of the state, or destroy the district with or without the consent of the citizens.

In Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700, this court quoted with approval the following from Hunter v. City of Pittsburgh, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151: " 'Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. * * * The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. * * * The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done * * * with or without the consent of the citizens, or even against their protest. * * * Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences.' " See, also, School Dist. No. 49 v. School Dist. No. 65-R, 159 Neb. 262, 66 N. W. 2d 561; Belgum v. City of Kimball, 163 Neb. 774, 81 N. W. 2d 205.

The New York Court of Appeals said in Bethlehem

Union Free School Dist. v. Wilson, 303 N. Y. 107, 100 N. E. 2d 159: "With respect to the claim that petitioner has been damaged by being deprived of part of its territory in contravention of its rights as a municipal corporation, it may be answered that a school district, though defined as a municipal corporation under section 3 of the General Corporation Law, has no territorial integrity; it is always subject to the reserved power of the State, exercised through its administrative officers in the Education Department, to change its territory according to current educational needs and good educational principles." See, also, Dowell v. Board of Education, 185 Okl. 342, 91 P. 2d 771; Zawerschnik v. Joint County School Committee, 271 Wis. 416, 73 N. W. 2d 566; People ex rel. Dixon v. Community Unit School Dist. No. 3, 2 Ill. 2d 454, 118 N. E. 2d 241; Anderson v. Peterson, 78 N. D. 949, 54 N. W. 2d 542.

If a school district as a legal entity is affected by change of its boundaries, it must follow that if any of its property rights are thereby involved or invaded or any of its financial affairs are involved of which it could complain, then it could maintain an action to protect those rights. However, it has repeatedly and consistently been decided and maintained by this court that no cause of action accrues to a school district as a corporation against a county superintendent for the manner in which he may change its boundaries. This doctrine was announced in the early case of Cowles v. School District No. 6, 23 Neb. 655, 37 N. W. 493, and it has since been consistently maintained. In that case the court said: "The laws of this state, as well by policy as by letter, have left the control of the boundaries of school districts, primarily, with the legal voters of each district respectively. * * * After the first or original organization of a new county into one or more school districts, no new districts can be formed, old ones altered, or the boundaries of any altered, without the movement therefor originating with the legal voters thereof, and their will to

that effect being expressed by petition of the strength prescribed by statute. These are matters with which the school district, as a corporation, or quasi corporation, has been vested with neither power nor duty * * *." See, also, School Dist. No. 49 v. Kreidler, *supra*.

School Dist. No. 67 v. School Dist. No. 24, 55 Neb. 716, 76 N. W. 420, declares: "No cause of action will accrue to a school district, as a corporation, against the county superintendent for the manner in which he may change boundaries of such district." The order of the county superintendent involved in that case was void and it was attacked by the school district for that reason. The court concluded: "Whatever may have been the rights of any voter of district 67 in the premises, the facts enumerated created no cause of action in favor of said district as a corporation. That a school district as such cannot question the action of a county superintendent in changing the boundaries of a district is thoroughly established in this state." See, also, Clausen v. School Dist. No. 33, 164 Neb. 78, 81 N. W. 2d 822.

The Legislature when it rewrote and re-enacted section 79-402, R. R. S. 1943, and included therein the language "district affected" knew that it was and had been from the early time when this court first spoke on the subject the law of the state that a school district as an entity had no such interest, property right, or concern in its boundaries as to qualify it to maintain an action concerning even a wholly void change therein by a county superintendent. The Legislature when it re-enacts a law adopts a judicial construction which has been previously given it. The Legislature is presumed to have known the effect which the statute originally had and by its enactment to have intended that effect to continue. County of Douglas v. Christensen, 144 Neb. 899, 15 N. W. 2d 53. A conclusion is justified that a school district is not in any legal manner affected as a corporate entity or subdivision of the state by a change of its boundaries.

There are only 3 school districts that would be affected by the proposed change of the boundaries of district 89. These are districts 4, 5, and 89. Districts 4 and 5 would be eliminated and their internal affairs and existence as a subdivision of the state would be ended. One reason why district 89 would be affected is that the applicable statute makes a newly enlarged district assume any indebtedness previously incurred by any district annexed unless it is otherwise specified in the petitions. It was not otherwise specified in the petitions in the present proceedings. Baker district would exist and could carry on its school affairs, would have and could exercise the same undiminished power of taxation, and could perform its governmental functions after the change in the boundaries the same as it has done in the past. State ex rel. Geneva School District v. Mitchell, 210 Wis. 381, 245 N. W. 640, 86 A. L. R. 1361, contains the following: "* * * the further question arises, and we think it should be determined, whether the school district itself has such an interest in the detachment of its territory as to authorize it to maintain this action. The present action does not involve the property of the district. If it involves anything in which the district has an interest, it is the 'affairs of the district,' and that raises the specific question of whether the boundaries of a district constitute any part of its affairs." The opinion refers to and quotes from authorities of various jurisdictions and proceeds as follows: "This declaration would seem to confine municipal affairs to the internal affairs of the municipality after the same has been organized and its boundaries fixed. It is only when the boundaries are fixed that the municipality comes into existence and is clothed with corporate powers. The municipality itself has nothing to say about its boundaries. That is a matter that is fixed or provided for by legislative action. When the legislature has provided for the boundaries of a municipality, that which may be termed the affairs of such municipality relates to

those transactions of corporate interest within the boundaries so fixed. * * * In People v. Los Angeles, 154 Cal. 229, 97 Pac. 311, it was held that the annexation of territory to a city was not a 'municipal affair,' but a matter entirely outside of 'municipal affairs.' "

Districts 4 and 5, district 89, Baker district, and the landowners and taxpayers who were not legal voters and taxpayers of districts 4 and 5 were designated as parties to this action. They or any of them were not proper parties. None of the named districts have any legal interest in the perpetuation of their boundaries; neither can any of them have an action in relation thereto. Likewise the landowners and taxpayers described above had no legal interest which would qualify them as litigants in a contest as to the boundaries of district 89. School Dist. No. 11 v. Copple, 88 Neb. 92, 128 N. W. 1133, states: "A person who owns taxable property within the territorial limits of a school district, but who is not a legal voter therein, has no such interest in the matter of the consolidation of that district with an adjoining one as authorizes him to contest the annexation proceedings either at the original hearing before the county superintendent or upon a review of the same by the district court."

The statute which authorizes this proceeding shows no concern with electors, landowners, or taxpayers affected but limits its scope to districts affected. The change of the boundaries of district 89 as proposed will not in any legal way affect Baker district. The fact that school taxes therein may be increased or decreased because of less school population therein does not affect its powers or rights in any manner of which the law takes cognizance. Districts 4 and 5 as legal entities are almost perfect democracies. Gaddis v. School District, 92 Neb. 701, 139 N. W. 280. The electors of school districts of that class have complete control of the school and school affairs in their respective districts and they alone may decide whether such school shall be con-

tinued or whether an attempt should be made to change the boundaries of the district.

The required statutory percentage of the legal voters of districts 4 and 5 have asked that the territory thereof be included in district 89. District 89 has by legal petition asked that its boundaries be changed to accomplish that result. Baker district is not within the meaning of the law a district affected by the proposed change of boundaries. The county superintendent of Logan County and the county superintendent of Custer County had jurisdiction and it was and is their mandatory duty to change the boundaries as requested in the petitions presented to them.

The judgment should be and it is reversed and the cause is remanded to the district court for Logan County with directions to sustain the petition in error of appellants and to order the county superintendent of Logan County and the county superintendent of Custer County, acting jointly, to grant the petitions filed with them in this proceeding and by proper order change the boundaries of district 89 to include therein the territory now within the boundaries of districts 4 and 5.

REVERSED AND REMANDED WITH DIRECTIONS.