By the Court.
 

 This is an error proceeding from the Court of Appeals of Trumbull county, Ohio. This cause was tried in the Court of Appeals on appeal and heard
 
 de
 
 novo. The parties will be referred to for convenience as the township district and the city district. The township district sought to avoid and annul certain action of the county board of education of Trumbull county, taken in the year 1921, whereby certain property was transferred from the township district to the city district, and further sought an accounting of the taxes which had been paid into the city district levied upon the property which was claimed to have been wrongfully transferred. The action of the county board of education was taken on June 6, 1921, and this suit was not begun until March 21, 1928.
 

 In 1916 the county board of education had transferred certain territory in the eastern part of Warren township from the Warren township district to the Warren city district, the part so transferred being located to the westward and to the southward of the city of Warren, and in so doing left remaining a portion of the Warren township district lying eastwardly from the city of Warren, containing approximately 81 acres of land, which was owned by the Trumbull Steel Company, a large manufacturing corporation, having a factory and other buildings located thereon of great value, but upon which no dwellings were located and in which no electors resided. The city of Warren is in the extreme eastern portion of Warren township, and the property of the
 
 *215
 
 steel company is likewise located on the easterly line of Warren township, and by the action of the school board in 1916 the property of the steel company was left segregated from the township district by a distance of more than two miles. An effort was made to maintain the contiguity of the steel company property with the township district by connecting the same by means of a strip of land two feet wide for a distance of nearly three miles. The two-foot strip of ground did not follow any highway, but followed the township line by a circuitous route from the southeast corner of the township district around the corner of the township itself to reach the property of the steel company. In 1921 a petition was filed with the county board of education, purporting to be signed by more than 75 per cent, of the freeholders owning property in the 81-acre tract of land of the steel company and in the two-foot strip of ground connecting the same with the township district, praying that the two-foot strip of ground and the property of the steel company be transferred to the city district. The board of education acted upon that petition and made the transfer. The Warren city district at the same time passed a resolution accepting the transfer. Thereupon the property was added to the tax duplicate of the city district for the year 1921, and taxes levied thereon have ever since been paid into the city district. In making the transfer, it became necessary to make certain adjustments of bonded indebtedness, and by the action of the county board the city district was required to assume the payment of bonds of the township district in the amount of $81,500, and that division of indebtedness was agreed to by the town
 
 *216
 
 ship district. Since 1921 the city district has paid to the township district upon principal and interest of said bonds the stun of $36,000. Since 1921 the city district, relying upon the augmented tax valuation of the. district by reason of the inclusion of the steel company property, has executed bonds in the further sum of more than $900,000 to provide additional schooling facilities for the children of the city district. Between June 6,1921, and March 21,1928, the township district, with full knowledge of the attempted transfer in 1921, accepted said payments of money, and took no action to annul and avoid the action of 1921 on the part of the county board of education.
 

 The county board’s action of 1921 was necessarily predicated upon Section 4696, General Code, which at that time provided:
 
 “A
 
 county board of education may transfer a part or all of a school district of the county school district to an adjoining exempted village school district or city school district or to another county school district upon the petition of a majority of the freeholders residing in the territory to be transferred and make an equitable division of the funds and indebtedness between said districts.” 108 O. L., pt. 1, 705.
 

 It is conceded that no freeholders resided in the territory which was in fact transferred, and it is admitted that the persons who signed the petition were electors who were owners of the 81-acre tract and the two-foot strip of ground, but who did not reside therein. Manifestly there could be no dwelling erected upon a two-foot strip of ground, and it is stated that that portion of the 81-acre tract not occupied by buildings is low and swampy ground
 
 *217
 
 not fit for residences. It further appears that in 1916 the connecting strip of ground was made 16 rods wide, but that in 1917 the county board of education narrowed the strip to two feet. Whether this was done to prevent any residences from being erected thereon and to prevent any electors residing on the strip does not appear. Section 4685, General Code, provides: “The territory included within the boundaries of a city, village or rural school district shall be contiguous except where an island or islands form an integral part of the district.”
 

 The county board of education in 1916 clearly violated that section in making changes in the boundaries of the districts, which left an 81-acre tract of land segregated from the township district and only connected therewith by a two-foot strip of ground nearly three miles in length. The county board of education had no more right to leave that tract of land segregated from the main body of the township district than it would have had to take it away from the city district by direct and affirmative action. Having acted illegally in the first instance, it is apparent that the county board sought to correct the wrong by its action of 1921. In so doing the county board interpreted the language of Section 4696 to permit a petition to be signed by freeholders owning, but not residing, in the territory proposed to be transferred. That was an erroneous interpretation of the section, and, if objection had been made at the time, it would have been the duty of the board to reject the petition and refuse to take any action thereon. If after action having been taken proceedings had been filed in court to annul the action on
 
 *218
 
 the ground of want of authority, and before readjustments of finances and school buildings had been made to conform to the new conditions, it would have been the duty of a court to set aside the proceedings and to annul the action. By reason of lapse of time and the changes which have been made by reason of the action taken in 1921, a different situation is presented.
 

 The county board of education has undoubted jurisdiction of the subject-matter of its action in 1921. Its action was invoked by an instrument which was sufficient in form and which purported to contain the signatures of 75 per cent, of the freeholders in the territory proposed to be transferred. The minutes of the meeting of the board of June 4, 1921, recite that its action was predicated upon “a petition signed by more than seventy-five per cent, of the electors residing in that part of Warren township rural school district hereinafter described,” etc. The resolution of transfer stated that the action was pursuant to the prayer of the petition, and a hearing thereon, and careful consideration of the same. The same resolution provided for the division of funds and indebtedness. This action having been followed by the acquiescence of both the township district and the city district for a period of seven years, it cannot in equity and good conscience be treated as a nullity.
 

 The township district has invoked the aid of a court of equity. We may not overlook the fact that the original error of leaving 81 acres of segregated territory attached to the township district in 1916 was for the benefit of the township district, and except for that error the action of 1921 would never
 
 *219
 
 have become necessary. The township district should therefore not complain that another error was made in the course of an effort to correct the former error. The Court of Appeals, in disposing of this matter, grounded its judgment in part upon the laches of the township district and that it was estopped at this late date to complain of the action of 1921. In the course of its opinion, that court cited the following authorities: Pomeroy’s Equity Jurisprudence (4th Ed.), volume 1, Section 419;
 
 Metz
 
 v.
 
 Anderson,
 
 23 Ill., 463, 76 Am. Dec., 704;
 
 Weiderholt
 
 v.
 
 Lisbon Special School Dist.,
 
 45 N. D., 561, 178 N. W., 432;
 
 Speer
 
 v.
 
 Board of Commrs. of Kearney County
 
 (C. C. A.), 88 F., 749;
 
 Black
 
 v.
 
 Brinkley,
 
 54 Ark., 372, 15 S. W., 1030;
 
 State, ex inf. Otto, ex rel. Harrington,
 
 v.
 
 School Dist. of Lathrop,
 
 314 Mo., 315, 284 S. W., 135;
 
 Stamper
 
 v.
 
 Roberts,
 
 90 Mo., 683, 3 S. W., 214;
 
 Henderson
 
 v.
 
 School Dist. No. 44,
 
 75 Mont., 154, 242 P., 979;
 
 School Dist. No. 1 of Pine River
 
 v.
 
 Union School Dist.,
 
 81 Mich., 339, 45 N. W., 993.
 

 Each and all of those cases support the conclusions reached, and upon those authorities we affirm the judgment of the Court of Appeals.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Jones, Day and Allen, JJ., concur.