[S. F. No. 15130. In Bank.—November 28, 1934.]

KERN COUNTY LAND COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[S. F. No. 15131. In Bank.—November 28, 1934.]

KERN ISLAND CANAL COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

30

McCutchen, Olney, Mannon & Greene for Petitioners.

Ira H. Rowell, Roderick B. Cassidy, Frank B. Austin and Arthur T. George for Respondents.

Athearn, Chandler & Farmer, Frank R. Devlin, Arthur M. Free, Edward G. Chandler and Milton T. Farmer, as *Amici Curiae* on Behalf of Respondents.

THE COURT.—Each of the above-named petitioners seeks by review the annulment of an order of the Railroad Commission.

In one proceeding before the commission, consumers of Kern Island Canal Company, a public utility, sought to curtail the service of water by the utility to lands in the Kern River delta region to which its system had been extended. In another proceeding the commission on its own motion brought before it other public utility canal companies also serving in that region. The proceedings were consolidated before the commission and after public hearings had the commission entered its order. The pertinent portions of the

order before us for review and the facts bearing thereupon are the following:

The predecessor of Kern Island Canal Company was organized to serve that portion of the territory known as the Kern River delta region situate below the city of Bakersfield in Kern County. The portion served extended from the Kern River on the north, south through range 28 east, and the easterly portion of range 27 east, M. D. B. & M., to Kern Lake, which formerly received the overflow of this region, but which has been reclaimed and is now dry lake bed. The lake area commences in the northerly tier of sections in township 32 south, range 27 east, and extends through that township over an area of about 17,000 acres. The area originally served by the utility was extended to include the dry bed of the lake, and the Petersdorf ditch, a branch of one of the company's main canals, was constructed along the southerly boundary thereof to serve this additional area. The southwestern extremity or boundary of the area as thus extended was the westerly line of township 32 south, range 27 east, or what is called in the record the San Emidio road. The service to this area through the Petersdorf and other ditches was commenced about the year 1893. In 1914 the construction of a new branch of one of the main canals was begun. This additional ditch, called New Rim ditch, circled the dry lake bed area along its southerly boundary, paralleling for the most part the Petersdorf ditch. In 1917 the New Rim ditch reached the westerly line of the lake bed, or San Emidio road. In the proceedings before the commission no question was raised of the right of the canal company to serve these 17,000 acres in the lake bed, which is contiguous to the area originally served, and which service at the time of the hearing had continued for a period of thirty years through either the Petersdorf ditch or the New Rim ditch. The New Rim ditch, in fact, was constructed and is owned by Kern County Land Company. Until the year 1918 this ditch served but a small portion of land which was not susceptible to irrigation through the Petersdorf ditch.

It is appropriate here to note the fact that the land company directly or indirectly also owns all or a major portion of the stock of the Kern Island Canal Company and of other public utility canal companies in the Kern River delta

region, about eight in number, and is the owner of about seven private canal systems which serve land of the Kern County Land Company. Further, the land company owns a portion of the irrigated lands within the areas served by all of those public utilities, with perhaps one exception, including ownership of about forty-four per cent of the irrigated lands served by Kern Island Canal Company. It may also here be noted that no particular issue is raised by reason of the fact that the New Rim ditch was constructed and owned by the land company. All parties appeared to concede that the extension of the facilities, no matter by whom constructed, was an extension of the ''line, plant, or system'' of the canal company within the meaning of section 50 (a) of the Public Utilities Act. (Stats. 1915, p. 115; *Valley Natural Gas Co.* v. *Midway Gas Co.*, 13 Opinions and Orders of the Railroad Commission, 313.)

In 1917 or 1918 the construction of the New Rim ditch was continued in a northwesterly and westerly direction as far as the Buena Vista levee for the purpose of serving lands acquired by the land company in section 18 of township 32 south, range 27 east, and sections 12, 11, 10, 9, 8 and 7 of township 32 south, range 26 east. These additional lands comprised a narrow strip seven miles in length, connected with the dry lake bed area by a small triangle of land comprising about half of section 18, township 32 south, range 27 east, which, at its westerly point of contact with the strip in township 32 south, range 26 east, is one-quarter mile or less in width. Subsequently the land company acquired the Cornwall lands which adjoin the last mentioned string of sections on the north, and comprise sections 6, 5, 4, 3 and 2 of township 32 south, range 26 east, and these combined sections are in the record designated as the Panhandle area.

The lands in the Panhandle area prior to 1930 were devoted mainly to alfalfa and grain crops which require their main irrigation in the season when the supply of water is adequate to serve the old area as well as all the territory in the Panhandle area to which the system has been extended. No complaint was made by anyone of this extension of the canal company's system until 1930 and subsequently, when a large portion of the Panhandle area was devoted to the

culture of cotton which requires irrigation as well in July and August when the normal flow in Kern River is low.

The issue respecting the extension into this section upon which the commission made its findings was whether the canal company had the right, pursuant to section 50 (a) of the Public Utilities Act, to extend its system into the Panhandle area without first having obtained a certificate of public convenience and necessity, and whether, no such certificate having been obtained, the canal company should be restrained from serving water in that territory. That section provides: "No . . . water corporation shall henceforth begin the construction of . . . a line, plant, or system, or of any extension of such . . . line, plant or system, without first having obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction; provided, that this section shall not be construed to require . . . such corporation to secure such certificate for an extension . . . into territory . . . contiguous to its . . . line, plant or system, and not theretofore served by a public utility of like character . . . " The commission found that the Panhandle area under the facts and within the meaning of the act was not contiguous to the "line, plant or system" of the canal company, and that theretofore the lands had been served by public utilities of like character. The commission on this finding based its order that the canal company cease and desist from furnishing and delivering water to the Panhandle area unless and until a certificate of public convenience and necessity authorizing an extension to that area first be obtained. Both the canal company and the land company seek by these proceedings to review the order of the commission in this regard. An exercise of power by the commission in excess of its jurisdiction is claimed.

The commission holds the view that no other provision of law nor any policy based on the principles of laches or estoppel can have the effect to legalize an extension into territory in violation of section 50 of the Public Utilities Act. While not questioning the soundness of this view we are nevertheless persuaded that under the facts presented by the record the finding upon which the commission based its order is not conclusive as to the character of the order which it could or should have made or of the issues

upon which a different order might properly have been based. We deem it unnecessary to discuss at great length the contentions and arguments with respect to the commission's conclusion that the Panhandle area is not contiguous to the territory served by the canal company, or to its system, or its conclusion that the area had theretofore been served by similar public utilities. ■ The decisions indicate that the question whether two areas are contiguous is not always to be determined by the physical facts of contiguity. That is, in a proper case, although the lands are physically contiguous, nevertheless the spirit, purpose and objects to be attained by the regulation in respect thereof may be violated to such an extent as to constitute the extension a violation of the requirement that the territory must be contiguous. (*People* v. *Young,* 301 Ill. 67 [133 N. E. 693]; *Board of Education* v. *Board of Education,* 121 Ohio St. 213 [167 N. E. 872].) ■ In such cases the question whether the territory is contiguous is primarily a question of fact within the exclusive jurisdiction of the fact finding body. Its findings will not be disturbed if there is any substantial evidence to support them. (*Western Canal Co.* v. *Railroad Com.,* 216 Cal. 639, 646 [15 Pac. (2d) 853], and cases cited.) We perceive no reason in the present case to disturb the finding of the commission that the lands are not contiguous. This applies as well to the finding that the Panhandle area had been served by other similar public utilities prior to the extension into it of the New Rim ditch. ■ There was evidence that public utility canal service had existed in this territory prior to and at the time of the extension thereto of the New Rim ditch, through the Buena Vista, Stine and Farmers canals. The canal company contends that the evidence is that the water served by these other utilities to the lands in the area, with the exception of the Cornwall lands which were served from a private source, was Kern Island Canal Company water. This fact, if it is a fact, would not show any lack of support for the commission's finding. It is the fact of the existence of the prior utilities' ability to serve the area that is controlling. When their systems and equipment are already in the field, they are entitled to consideration before a competitor may be allowed to enter.

■ The facts in the present record, however, have brought about an obviously unusual situation. Because of the family union among the various utility canal companies and the land company, no protest or resistance has been made to the extension of the canal company's system into the Panhandle area. It was therefore on the commission's own motion, after these lands had been served by the canal company for a period of more than ten years, that the facts of the extension and the relationship among the utilities and between them and the land company were inquired into. It becomes apparent, therefore, that the persons who became entitled to primary consideration in the proceedings before the commission were those upon whose complaint the matter was first called to the commission's attention. They are the users of the water served by the Kern Island Canal Company in the old area. Other utilities have never objected to the entrance of the canal company into the new field. Any policy favoring economy leading to restrictions on the extension of facilities into territory already served by an adequate system, it is now too late to consider or apply.

■ There is no policy in the law, however, which requires the commission to enter an absolute cease and desist order in a situation such as all those interested in the present case find themselves. It is true that the commission has general power to make injunctive orders in the exercise of the jurisdiction conferred upon it (*Motor Transit Co*. v. *Railroad Com.*, 189 Cal. 573, 577 [209 Pac. 586]); but this relief is equitable in its nature and all considerations must be weighed by the commission, including as well the equities in favor of the party sought to be restrained and all those who will be affected by the order. ■ In the light of the facts in the record which show that for a long period the land company has been receiving and the canal company has been serving, in the Panhandle area, without the objection of any person for whose protection the statutory provisions were enacted, the waters from its Kern Island Canal system which have not been needed or required by consumers in the old area, it became incumbent upon the commission to frame its order so as to permit the canal company to continue to use any such waters if it could be done without prejudice to the users in the old area. For this purpose it should have made findings in relation to the *quan-*

*tum* of such waters, if any, as would be found to be or become available for use by the canal company or the land company in the Panhandle area.

██ We perceive, however, no facts or equities in this case which call for the application of the exception provided by section 6 of the Water Companies Act (Stats. 1913, p. 84), or of the decision in *Butte County W. U. Assn.* v. *Railroad Com.*, 185 Cal. 218 [196 Pac. 265], relied upon by the petitioner Kern County Land Company in support of its contention that, having once been served with water by the utility, it is entitled to a continuation of the service in times of shortage. In the case relied upon it was held that later consumers, having once been served with water through the system, were entitled to a continuation thereof in times of shortage on a *pro rata* basis, with no preference or priority in favor of the old consumers, and the order to that effect was affirmed. However, in that case the affirmative showing was that the inclusion within the system of the new consumers was in all respects in accordance with statutory law. The correct application of that decision to the antecedent facts and the equities in the present case merely constitutes the land company a new or additional consumer, within the meaning of section 5 of the Water Companies Act, and justifies and requires the exercise of the power of the commission pursuant to that section to determine what amount of water may be served to the new or additional consumer or consumers in the Panhandle area which will not injuriously withdraw the supply wholly or in part from the consumers in the old area. ██ Our conclusion in respect to this phase of the case is not to be deemed to entitle the Kern Island Canal Company in the future to serve any water to said territory, with the exception of such waters as the commission shall find are not required for use in the old area, without first having procured the certificate required by section 50 (a) of the Public Utilities Act.

The commission also made an order that certain lands designated as "A" lands, which had not required nor been served water for fifteen years, should be excluded from the service area of the Kern Island Canal Company "except as may be subsequently authorized by the commission". The commission, in explanation of the form of its order,

states that it so left the matter in order to afford an opportunity for a modification of the order should any error have been made, and thus prevent any injustice to any person. The owners of these lands are not protesting the order. The only protestant is the petitioner Kern Island Canal Company. Its interests, as well as those of the owners of such lands, are sufficiently protected by the form of the order.

That portion of the commission's order directing that Kern Island Canal Company cease and desist from furnishing or delivering water to the Panhandle area unless and until a certificate of public convenience and necessity authorizing an extension to this area shall first be obtained, should be annulled and the matter be remanded for further proceedings to the end that a finding be made as to what amount of water, if any, may be furnished to lands in the Panhandle area without prejudice to the rights of users in the old area, and until the further order of the commission; and that an order be made in conformity with the views herein expressed.

It is so ordered.

A petition for rehearing and for modification of opinion was denied on December 28, 1934, and the following opinion then rendered thereon:

THE In view of the petitions for modification of the order appended to the foregoing opinion, it is appropriate to state that it was not intended that the commission might not make a general finding as to what water, if any, is available to the consumers in the Panhandle area which is not required by the consumers in the old area and the use of which would not prejudice the rights of the consumers in that area. Furthermore, it was intended that the commission should retain a continuing jurisdiction over the matter and in connection therewith it would undoubtedly have the power to formulate and enforce such rules and regulations governing water service as might be necessary for the protection of consumers of the canal company and to permit the sale and delivery of water by it to consumers in the Panhandle area when the same may

be done without prejudice to the rights of consumers in the old area for present and prospective domestic and irrigation uses.

The petitions for modification and for rehearing are denied.