ENSLEY et al. v. GOINS et al.

No. 31078. May 18, 1943.

Rehearing Denied June 8, 1943.

*138 P. 2d 540.*

Ogden & Wallace, of Ardmore, for plaintiffs in error.

Reuel W. Little and Jack H. Smith, both of Madill, for defendants in error.

BAYLESS, J. August 13, 1942, an application was filed on behalf of certain electors of Chowning school district No. 14, asking this court to assume original jurisdiction and grant a writ of certiorari for the purpose of inquiring into the jurisdiction of the county superintendent of Marshall county, on petition, and the district court of that county, on appeal, to order an annexation of said district to Madill school district No. 2. We assumed jurisdiction and directed response be made in 30 days. The petition for writ of certiorari was filed August 15th. August 28, 1942, a demurrer and motion to dismiss was filed, and on September 22, 1942, no opposition thereto having been made, we entered an order denying the petition for writ of certiorari. Various steps were taken thereafter seeking to have this court recall its order denying the petition, and finally amended pleadings were permitted to be filed and the matter allowed to stand for consideration. January 20, 1943, a motion to dismiss the amended petition for writ of certiorari was denied, and we were left with the consideration of the matter on the merits as disclosed by the pleadings and briefs of the parties.

The facts are relatively brief, and the parties do not differ respecting them. Prior to March 12, 1942, Chowning district existed; south of it was Oakland school district No. 1; and south of Oakland district was Madill district. March 12, 1942, a strip of land ten acres wide and either 1¼ or 1⅝ miles long through the center of Oakland district, running north and south and touching the aforesaid districts to the north and south, was annexed to Madill district. No appeal was taken from that act of the county superintendent. Thereupon, with two petitions from electors of Chowning district before him, one purporting to be signed by a majority seeking annexation to Russett district on the north and the other purporting to be signed by a majority seeking annexation to Madill district, the county superintendent made an order annexing Chowning district to Madill district. It is this action that is complained of. It appears from petitioners' pleadings or brief and from the answer and brief of respondents that before the district judge passed on the appeal from the action recited, another strip of about the same dimensions lying on the east side of Oakland district was annexed to Madill district, and no appeal was taken therefrom. Thus the two districts were joined by two such strips.

Thus we have before us the petitioners who challenge the validity of the orders annexing these two strips out of a district wherein they did not live to a district on the south, and also complaining of the use of these two strips, or either of them, as the basis for saying Madill district by reason of either or both of these strips was adjacent to Chowning district and would thus support an order of annexation under 70 O. S. 1941 §§ 890.1—890.8 (Senate Bill 81 S. L. 1941).

Respondents assert petitioners are not in a position to raise any question regarding the validity of the annexation of the two strips out of Oakland district since petitioners were not in that district, and that the amended petition should be denied because it is clear from the record that the county superintendent had jurisdiction to act and, on certiorari, this court limits its inquiry to the issue of whether the county superintendent had jurisdiction. Oliver v. State, 122 Okla. 66, 251 P. 31. Also, respondents contend that, since no attack was made on the orders annexing the strips of Oakland district to Madill district, the attempt of petitioners to raise the question amounts to a collateral attack.

Because we are of the opinion that the county superintendent had jurisdiction to order the annexation of Chowning district to Madill district, there is no occasion to consider the issue of collateral attack.

We pass by consideration of the issue based upon the annexation of the center strip. See our opinion in School District No. 9, Caddo County, v. Jones et al., No. 31140, decided May 11, 1943, 193 Okla. —, 140 P. 2d 922.

A reading of the judgment of the district judge in this matter discloses that he took into consideration the annexation of the strip of Oakland district along the east edge of the district, and found jurisdiction in the county superintendent to order annexation by virtue of this.

Our Legislature has plenary power with respect to the establishment and change of school districts, and may exercise that power directly by laws containing definitions and explicit directions for all occasions, or it may delegate the exercise of that power to subordinate agents under such terms as it judges to be reasonable. Musick v. State, 185 Okla. 142, 90 P. 2d 631. The language of the act is such as to indicate the Legislature intended the question to be one of broad ministerial policy, and the restrictive provisions of the act relating to appeals to district courts and providing for no other appeals limit our consideration of the matter to the issue permissible under certiorari. School District No. 37 v. Latimer, 190 Okla. 620, 126 P. 2d 280, and Oliver v. State, supra.

Petitioners urge that two districts are not adjacent as meant in the act when the bulk of each district lies some distance from the other and they are connected only by a narrow strip of land. It is to be observed that the Legislature did not define the term adjacent by saying to what extent districts had to touch, but left that to the determination of the experienced agents charged with the ministerial duty. We are unwilling to say that the fact Madill district touched Chowning district for the width only of a ten-acre subdivision deprived the county superintendent of power to act affirmatively upon the petition for annexation.

We are cited text from 56 C. J. 208-209 purporting to state a general rule such as petitioners contend for; but when we read the decisions (Board of Ed. v. Board of Ed., 121 Ohio, 213, 167 N. E. 872, and People v. Moyer, 298 Ill. 143, 131 N. E. 280) we find the language of the statutes governing the annexations considered therein to differ from ours in that districts are there defined as "compact" and "contiguous" bodies of territory. We feel they are of little assistance.

The first case cited in the preceding paragraph brings us to the final defense interposed by respondents. They assert that petitioners have not been timely in their proceedings here and the annexation proceedings have been carried out, and especially point to petitioners' delay in August and September, 1942, after they had applied to this court to assume original jurisdiction, that resulted in an order of denial. They assert that thereafter they considered the matter adjudicated, and fully carried out all steps to consummate the annexation, and that much harm would now result if the annexation should be held invalid and the districts forced to dis-

organize themselves. In the Ohio case that was a consideration that led the court to refuse to interfere in the annexation, although it expressly held the annexation was in violation of the terms of the statute.

The petition for writ of certiorari is denied.

CORN, C. J., and RILEY, WELCH, and DAVISON, JJ., concur. GIBSON, V. C. J., and OSBORN, HURST, and ARNOLD, JJ., dissent.

———

ARNOLD, J. (dissenting). The Legislature from the beginning has indulged the common concept of a school district and it has always indicated that a school district should constitute a compact whole. In order that the convenience of the public to be served by the school established therein might be best promoted, it has always indicated its intention that a school district should be as regular in general conformation as possible under the circumstances. It originally recognized that physical or topographical conditions would necessarily vary the regularity of the conformation of school districts. Thoroughly appreciative of the importance of convenience, but recognizing the intervention of natural and topographical conditions as necessarily affecting the regularity of conformation of such districts, it originally established and promulgated a general plan of organization of school districts. At the inception of its legislation on the subject, it provided:

"It shall be the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts and to change such districts when the interest of the people may require it, *by making them conform to existing topographical or physical conditions, . . .*" (70 O. S. A. § 31.)

It is obvious that the Legislature recognized that physical or topographical conditions would necessarily affect the convenience of the public in certain instances and for this reason would make irregular boundary lines necessary, in many instances, in order to promote the convenience, fair treatment, and well-being of those to be served by the school system of the district.

The Legislature never intended to give approval to gerrymandering. It did recognize the importance of physical or topographical conditions and the effect thereof on the convenience of the public and made specific provision for variance from the general plan adopted by it in consideration thereof. The Legislature intended that the various portions of a school district should be adjacent and contiguous when practicable. See School District No. 9, Caddo County, v. Jones et al., No. 31140, decided May 11, 1943, 193 Okla. —, 140 P. 2d 922.

"Adjacent" and "contiguous" do not ordinarily permit of anything of the same kind between, and the Legislature never intended a variance from this rule except as required by physical or topographical conditions. It was never intended by the Legislature that one large district should have annexed to it another large district, by the attachment of a narrow, attenuated strip, leaving a large portion of still another district between the major portions of the district thus formed without regard to physical or topographical conditions. This is the effect of the annexation proceeding presented by this record.

The Legislature never conferred jurisdiction upon the county superintendent, nor the district court on appeal from his order of annexation, to attach nonadjacent, noncontiguous territory except in cases where the physical or topographical conditions require it in order to promote the convenience of the public. The major portion of district Chowning, attached herein to the Madill district, is nonadjacent and noncontiguous to the attaching district, and still another district lies almost wholly between the attached Chowning district and the Madill district to which it was attached. There is nothing in the record to show that such a situation was

necessitated by existing physical or topographical conditions. It is evident that no such conditions existed and, viewing the record as a whole in this case, it is evident that the striking departure from the plan and scheme originally outlined by the Legislature was prompted by other motives than the convenience of the public to be served by the school system in the district as composed under the purported attachment.

Neither the county superintendent, nor the district court on appeal from his order, has the power to effectuate such a radical departure from the original plan and scheme devised by the Legislature without regard to topographical or physical conditions, and I am, therefore, compelled to respectfully dissent.

I am authorized to state that GIBSON, V. C. J., and OSBORN and HURST, JJ., concur in the views herein expressed.