SCHOOL DIST. NO. 25, WOODS COUNTY, et al. v. HODGE, State Supt. of Public Instruction, et al.

SCHOOL DISTS. NOS. 1, 2, 3, KAY COUNTY, et al. v. SAME.

Nos. 33158, 33161.   July 8, 1947.

*183 P. 2d 575.*

adequately fulfill its duty under the Constitution to maintain a system of free public schools wherein all the children of the state may be educated (article 13, sec. 1, Constitution) the 1947 Session of the Legislature passed engrossed House Bill No. 85. It presents a comprehensive plan of reorganization of school districts, transferring of pupils and equitable distribution to complying districts of $18,000,000 appropriated by the same Legislature and other funds on a uniform basis to school districts so that all the children of the state might have the benefits of education according to the minimum standards of education set up by the Legislature in the act. The act says "the right of every child to a free common school education, including high school but not including kindergartens and junior college, is hereby guaranteed."

Though the purposes of the act are known to be commendable and in furtherance of the foregoing constitutional mandate, it is not for the courts to say that the legislation is good, bad advisable or inadvisable in whole or in part. The determination of the policy to be pursued in matters of enactment of legislation to discharge its constitutional responsibility to the people in matters of education is a question that rests solely with the Legislature. In such an attack as is here made on the act, the only justiciable question is: Did the Legislature act within the powers granted to it or did it exercise its authority arbitrarily and capriciously, thereby transcending its power?

L. Z. Lasley and H. C. Crandall, both of Alva, Bruce B. Potter, of Blackwell, Ross & Ross, of Newkirk, John Drennan and Ellis Eddy, both of Medford, T. R. Wise of Sayre, Marshall Word, of Arnett, F. C. Duval, of Ponca City, and Charles G. Ozmun, of Lawton, for petitioners.

Mac Q. Williamson, Atty. Gen., and Richard M. Huff, Asst. Atty. Gen., for respondents.

Where the constitutionality of an act of the Legislature is in question, all reasonable doubt will be resolved in favor of the questioned authority and the act will be declared constitutional unless it can be clearly demonstrated that the Legislature did not have the power or authority exercised or that its authority was exercised arbitrarily and capriciously, for instance, as to classification or delegation of authority, to the prejudice of the rights of some of the citizens. Particularly is this true where

ARNOLD, J. In an effort to more

the act in question is, as here, of great public concern involving the performance of an absolute duty imposed on the Legislature by the basic law of the state. See Associated Industries of Oklahoma v. Industrial Welfare Comm. et al., 185 Okla., 177, 90 P.2d 899; Herrin et al. v. Arnold, Judge, 183 Okla. 392, 82 P.2d 977; Townsend et al. v. Yeomans, 301 U. S. 441, 81 L. Ed. 1211; Excise Board of Ottawa County v. St. Louis, S. F. Ry. Co., 176 Okla. 641, 57 P.2d 261; Pawnee County Excise Board v. Kurn, 187 Okla. 110, 101 P. 2d 614; Gibson Products Co. of Tulsa v. Murphy, State Labor Com'r, et al., 186 Okla. 714, 100 P.2d 453; Brown v. State Election Board et al. (Foley, Intervener), 197 Okla. 169, 170 P. 2d 200.

The act is severable and therefore the unconstitutionality of any severable part of the act will not affect the validity of otherwise constitutional parts of the act. Johnson v. State Election Board, 197 Okla. 211, 167 P.2d 891; Sterling Refining Co. v. Walker 165 Okla. 45, 25 P.2d 312; Musick, County Supt., v. State ex rel. Miles, 185 Okla. 140, 90 P.2d 631; Dowell v. Board of Education, 185 Okla. 342, 91 P.2d 771.

Any severable portion of the act, though invalid, will not be discussed by us nor determined at this time because not of demanding present importance and the other circumstances maintaining, unless it appears that the enforcement thereof would adversely and prejudicially affect the parties hereto or those similarly situated. The applications herein, both alleging various grounds of unconstitutionality, on behalf of various school districts of same and different counties, were filed June 9, 1947, and June 13, 1947, respectively. The act became effective by its terms on July 1, 1947. Some of the features of the act which are alleged to be unconstitutional will not become operative or be put into operation except upon the happening of a future contingency that may not occur, though respondents admit that they shall, to the best of their ability, put all of the

valid provisions of said act into operation if, as and when the contingency arises which would demand their enforcement; other severable portions of the act, if enforced, might not affect the parties here or those similarly situated adversely. The importance of this matter of great public concern and the urgency of a decision as to the constitutionality of the act generally have demanded great speed on the part of the attorneys for petitioners and respondents and the court. It is not deemed advisable under all the circumstances to pass upon questions raised which will arise only under the happening of a future contingency that may not occur or that relate to severable matters that may not affect the parties, or any one similarly situated, prejudicially.

It is first contended that the act is invalid because its title is insufficient under the provisions of article 5, sec. 57, of the Constitution of Oklahoma. That section of the Constitution, insofar as its language is material to be considered here, reads:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title . . . provided, that if any subject be embraced in any act contrary to the provisions of this section such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The first clause of the title of House Bill No. 85 reads:

"An Act relating to the public schools of Oklahoma."

Following this language the title contains some 14 subsidiary clauses all referable to and predicated on the subject expressed in the above-quoted clause. These subsidiary clauses fairly foreshadow the cotents of the act itself and in our judgment are in no way misleading.

House Bill No. 85 is composed of four articles. Article 1 provides for the apportionment of certain state revenues to school districts, and deals with the

transfer of school children from the school district in which they reside, to another school district for educational purposes. Article 2 provides for the disorganization and mandatory annexation of certain classes of school districts. Article 3 apportions financial assistance to school districts. Article 4 contains a severability clause, fixes the effective date of the act and declares an emergency.

It has been uniformly held by this court that the purpose of section 57 of article 5, supra, is to prevent the blending of repugnant objects of legislation in one act and to prevent the inclusion in legislative acts of provisions not indicated by the title of the act in order that those interested in such legislation may not be misled or misinformed as to the contents of the act by any expression used in its title. This court with equal uniformity has also held that a title to an act is not violative of the above-quoted constitutional provision because it includes many details covered by the act if they all relate to the general subject or object to be attained by the act. In the case of Oklahoma Light & Power Co. v. Corporation Commission et al., 96 Okla. 19, 220 P. 54, the first paragraph of the syllabus reads:

"Section 57, art. 5, of the Constitution of Oklahoma, providing every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, is satisfied if the act has but one general subject and that is fairly indicated by the title. It may have many details, but if they all relate to the same general subject or object, they are properly included therein. The purpose of this provision of the Constitution was to forbid the Legislature from embracing in any one act two or more unconnected subjects." Griffin v. Thomas, 86 Okla. 70, 206 P. 604; Atwater v. Hassett, 27 Okla. 292, 111 P. 802; School District No. 37, Washita County, v. Latimer, Co. Supt., 190 Okla. 620, 126 P.2d 280; Lowden et al. v. Luther, Co. Treas., 190 Okla. 31, 120 P.2d 359.

It is true that the title to the act here involved goes into much detail, but so long as these details merely reflect provisions of the act which are cognate and germane to the main object of the legislation as expressed in the title, the indexing of salient features of the act does not create any infirmity by reason of the provisions of section 57, article 5 of the Constitution of Oklahoma.

Plaintiffs assert that the act offends constitutional guarantees in that section 1 (a) and section 2, art. 1, do not have a uniform operation throughout the state. For this contention to be sustained it must appear that the act levies taxes, which it does not attempt to do, or that it discriminates against some districts in matters pertaining to school administration. We are unable to follow this contention to the conclusion reached by plaintiffs. It is only those districts which transfer all their pupils to another district for education which do not receive a share of state aid, and if a district elects to educate its own pupils it receives such portion of state aid as the minimum program requires over and above the amount produced by its local tax levy if it complies with the uniform requirements. This is all that a district may rightfully expect from the State Aid Fund, which, as its name implies, is intended to aid in assuring a minimum educational program for all children of the state. A district not requiring this aid for this purpose has no rightful claim to any part of the state's revenues. Miller v. Childers, State Auditor, 107 Okla. 57, 238 P. 204; Pawnee County Excise Board v. Kurn, 187 Okla. 110, 101 P.2d 614; Vogel v. Corporation Commission, 190 Okla. 156, 121 P.2d 586.

We see no valid constitutional objection to the method adopted by the Legislature for the apportionment of moneys belonging to the state in aid of the educational program adopted to insure uniformity of opportunity to all children of the state to receive at least that degree of instruction embraced by the minimum program made available to

all districts through the method of financing best adapted to their location and needs. By the terms of the Enabling Act, by the provisions of the Constitution, and by prior legislative enactments, the duty of establishing and maintaining a system of free public schools has been imposed upon the Legislature and that duty carries with it the implied power to create, alter or even to abolish districts as a means suitable to the accomplishment of that purpose. This power of the Legislature is not exhausted so long as there remains room for improvement in the system sought to be established. It may return to its task again and again until the public policy of the state respecting its public schools has been established on a firm and equitable basis. Dowell v. Board of Education, 185 Okla. 342, 91 P.2d 771; Ensley et al. v. Goins et al., 192 Okla. 587, 138 P.2d 540; School Board of Consolidated School District et al. v. Monsey, 198 Okla. 41, 175 P.2d 76; School District No. 17 of Garfield County v. Zediker, County Supt., 4 Okla. 599, 47 P. 482.

Plaintiffs contend that the act under consideration violates section 56, art. 5 of the Constitution, which, after setting forth what the general appropriation bills shall embrace, provides:

"All other appropriations shall be made by separate bills, each embracing but one subject."

It is asserted that section 1 of article 1 of the act, which apportions certain revenues derived from the Motor Vehicle Registration Act, constitutes an appropriation of that class of revenue, and that section 2 of article 1 of the act, which apportions revenue derived from the gross production act, constitutes an appropriation of that class of revenue, and that the act as a whole embraces two subjects in one appropriation act so as to violate section 56, art. 5 of the Constitution.

With this contention we cannot agree. In the first place, the act in question is not and does not purport to be an appropriation of the revenues mentioned therein. Plaintiffs cite and rely upon Edwards v. Childers, 102 Okla. 158, 288 P. 472. That case is distinguishable for the reason that the law thereunder consideration, while not designating any particular amount, did contain language sufficient to permit or authorize the expenditure of the money derived from the tax, without any further act or particular appropriation of the money. Edwards v. Childers, supra, does hold that no arbitrary form of expression or particular words are required by the Constitution in making an appropriation. It is sufficient if a direction or authority is given to the proper officer or officers to pay money out of the treasury. That final authority was given by the act under consideration in Edwards v. Childers, supra. But the sections here under consideration convey no such final authority. First, it may be noted that 5% of all money from license fees, etc., collected or received by the Tax Commission shall be apportioned (not appropriated and apportioned as stated in plaintiffs' brief) to the credit of the Oklahoma Tax Commission fund. This 5% is then in the special fund, but authority is not yet given to pay it out. Such authority is provided for in the last clause of subsection (a) of said section 1, which says "to be paid out of said fund in payment of expenses necessarily incurred by said commission in the performance of its lawful duties and upon direct appropriation by the Oklahoma Legislature." It is therefore plain that no authority was given to expend or pay out the money until a direct appropriation was made by the Oklahoma Legislature.

So it is with the 95% of all license fees and penalties, collected or received by the commission, from registration of farm trucks and automobiles. First, it is apportioned (not appropriated) to the several counties in which it was collected, for the use and benefit of the common schools of the county. The money is then remitted to the respective county treasurers. It is then

to be, by the county treasurer, apportioned on an average daily attendance per capita distribution basis, to the school districts of the county where the pupils attend, provided that the majority school district makes an ad valorem tax levy of 15 mills and the separate school districts of the county make an ad valorem tax levy of at least 1.5 mills for the current school year, and had an average daily attendance of 13 or more pupils. The money is then apportioned by the county treasurer to the several school districts in the county meeting such requirements, in a definite and fixed sum to each school district. Subdivision (c) of section 1, art. 1 of the act provides, in substance, that the various school districts may then use such funds, along with the 15-mill and 1.5-mill levy, in making up their annual estimate of income and expenditures. When this estimate is so made and approved, it constitutes a final appropriation of the money. 68 O. S. 1941 §§289 and 293. No final authority is given to pay out any part of this money until the final estimate of the school district is made and approved.

The same may be said as to the apportionment of the gross production tax, under section 2 of article 1 of the act, except as to two per cent of the gross production tax. It is plain that by the terms of the two sections, no appropriation is made of either of the two classes of funds, except 2% of the gross production tax.

Neither may it be said that more than one subject is involved in the apportionment of the money as provided in the act. The principal subject of the legislation is the public schools of the state. The apportionment or allocation of certain revenues is merely incidently to the main subject.

By 47 O. S. 1941 §22.10 the registration fees imposed by the Motor Vehicle Registration law, when paid in full, are in lieu of all ad valorem taxes, general and local, to which such vehicle may be subject as personal property. 68 O.S.

1941 §821 makes substantially the same provision with respect to gross production tax. When the Legislature made the motor vehicle registration fees and gross production taxes to be in lieu of all ad valorem taxes, general and local, it deprived the counties, cities, towns, and school districts of the state of a substantial source of revenue to pay the expenses of their various functions. It took away the power to tax by ad valorem taxation every motor vehicle in the state, from the heaviest truck trailer or truck semi-trailer down to motorcycles, thus reducing materially the source of revenue for the maintenance of local government and school districts. The same is true as to property devoted to the production of oil, gas, and other minerals. That is what justifies apportioning part of the motor vehicle registration fees and gross production tax back to the several counties, cities, towns, and school districts. So, there is but one subject involved in that apportionment, in that the provisions of sections 1 and 2, art. 1 of the act involve only the proper disposition of funds derived under acts of the State Legislature which deprive counties, cities, towns, and school districts of the power to tax ad valorem certain classes of property otherwise taxable locally. There is no violation of section 56, art. 5 of the Constitution by the provisions of sections 1 and 2, art. 1 of the bill under consideration.

It is urged that the provisions of article 2 of the act, relating to the annexation of school districts and authorizing the exercise of power in connection therewith upon the State Board of Education, is unconstitutional and void.

It is observed that section 5 of article 13 of the Constitution of Oklahoma vests in the Board of Education the power of "supervision of instruction in the public schools" of Oklahoma. By the constitutional provision, it is provided that these powers and duties of the Board of Education shall be prescribed by law.

It is urged that the maxim **expressio unius est exclusio alterius** (11 Am. Jur. §57) applies, so that the alleged additional grant of power and authority, apart from supervision of instruction, strictly speaking, and relating to the annexation of school districts, may not, by statute, be granted nor conferred upon the Board of Education.

The constitutional provision vesting the power of supervision of instruction in the Board of Education is not a limitation, but a grant of power.

The true rule that state officers, boards, commissions, and departments have such powers only as have been delegated to them by express constitutional and statutory provisions or as may be implied from the nature of the particular duties imposed upon them, 59 C. J. §118, is relied upon. However, by the provisions of section 36, art. 5, Constitution of Oklahoma, the authority of the Legislature shall extend to all rightful subjects of legislation. And, by the same section it is provided that the specific grant of authority contained in the Constitution, upon any subject whatever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject.

It is our view that the matter of legislative conference of additional powers upon the board, relating to the free public school system of the state, but extending beyond the supervision of instruction, constituted a rightful subject of legislation. The additional powers conferred upon the Board of Education by the statute were not inconsistent with the power and authority that had been conferred upon the board by constitutional provision, and since therefore within contemplation of section 36, art. 5, Constitution, supra, the prior constitutional grant of power does not exclude, by statutory provision, the conference of additional powers upon the board, the contention is untenable and such additional powers, legislatively conferred by article 2 of the act, are fairly within the legislative discretion,

and so, valid and constitutional.

The power to determine the policy of the law is primarily legislative, and cannot be delegated, but an examination of the provisions of House Bill No. 85 will disclose that the Legislature has prescribed the policy and fixed the standards to be followed by the State Board of Education in performance of the duties imposed upon it by the act. See Bailey v. State Board of Public Affairs et al., 194 Okla. 495, 153 P.2d 235. It is presumed that the standards fixed will be adhered to strictly by the board. Wells v. Childers, 196 Okla. 339, 165 P.2d 358.

It is the contention of plaintiffs that paragraphs a and b of section 1 and section 2 of article 1 of the act are violative of article 11 of the Constitution for the alleged reason that a portion of the common school fund of the state is apportioned to the use and benefit of high schools in the state, which they say are not public schools, and to public schools, on daily attendance basis instead of enumeration basis as prescribed by the Constitution. Unless the premise on which this contention is based, to wit, that these funds apportioned under the act are a part of the common school fund of the state created by the Enabling Act and the Constitution, then this contention must fall.

The apportionment is from funds accumulated from vehicle license fees and gross production taxes to the counties, thereafter to be apportioned to the school districts for the use and support of the common schools of the county. These funds never become a part of the common school fund and the constitutional provision has no application. Miller v. Childers, supra.

Petitioners contend that certain classifications made by the Legislature are capricious and arbitrary and violative of article 5, sec. 59 of the Constitution, which provides as follows:

"Laws of a general nature shall have a uniform operation throughout the

state, and where a general law can be made applicable, no special law shall be enacted."

The distinction between a classification that is reasonable and one that is capricious and arbitrary is well stated in Williams v. Hutchens, 187 Okla. 268, 102 P.2d 841, as follows:

"In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination."

It is first contended that the manner of distributing a portion of the auto license and farm truck license tax and the gross production tax is capricious and unjust, and based upon an arbitrary classification. Petitioners concede that the Legislature could, by classification, determine which of the districts should participate in the distribution of these taxes and which should not, provided that the method of classification was founded upon some natural distinction and was not arbitrary and capricious.

Article I, sec. 1(b) and sec. 2 of the act provide for the distribution of that portion of the above taxes allotted to schools, and require that they be paid to the county treasurer of the respective counties, and by him allotted within his county on an average daily attendance per capita distribution basis to the school districts of the county where pupils **attend** school.

Under this provision districts which transferred all their pupils to schools in other districts, or in which there lived no children of school age, could not participate in the distribution of these funds. Petitioners say that by section 4 of article I, providing for the payment of transfer fees by a sending district to a receiving district, all expenses of the receiving district occasioned by the transfer of pupils to it by the sending district are fully paid, and that the sending district is entitled to its proportionate share of such funds in order to assist it in the payment of such transfer fees.

Assuming that the purpose of the act, as stated in section 3 thereof, is to guarantee to each child a free common school and high school education, it is apparent that the Legislature sought to provide funds for the operation of schools in districts where schools were held, and that it concluded that allotment of such funds to school districts in which no schools were held was unnecessary. We think that such classification is based upon a real, substantial and distinctive difference between the two classes of school districts.

We conclude that the classification of school districts by this method by the Legislature was not arbitrary and capricious.

Petitioners next contend that article II, section 1(a), which provides that any school district transferring all of its pupils to the same school district is "hereby disorganized and annexed to the district to which such pupils were transferred," is arbitrary and capricious. They contend that thereby a school district on one side of the state might be attached to one on the opposite side, or that a district in the state might be attached to one outside the state.

The contention made is without merit. We have heretofore held that the Legislature has plenary power with respect to the establishment and change of school districts. Ensley v. Goins, 192 Okla. 587, 138 P.2d 540. A reading of

section 1 of article 11, plainly indicates that all annexations therein provided for must be made within the transportation area or areas in which such district is located. Obviously, such transportation district does not include territory in another state or upon opposite sides of the state. It would be unreasonable to assume, without any facts before us to justify such assumption, that all pupils in one school district lying in Texas county could be by that district transferred to Oklahoma county, as suggested by petitioners, and that under the present law such district would be annexed to Oklahoma county. Even if such construction were justified by the provisions of the act, it would result in an absurdity, and if the law were susceptible of any other reasonable interpretation, that interpretation would be given. Taylor v. Langley, 188 Okla. 646, 112 P.2d 411. But we find nothing in the act and particularly in the section in question which justifies such a construction.

The last contention of petitioners in this respect is that the method of distributing the unused residue of the $18,000,000 appropriation by the Legislature as state aid is unwarranted, capricious and unjust in that it provides that such unused residue shall be distributed among the several state aided districts in ratio to the minimum program cost in each. This contention, like the preceding one, is, in our judgment, prematurely made for the reason that it is impossible to determine at this time whether any balance of said appropriation will remain to be distributed after the provisions of the law with reference to state aid are fulfilled. We will not determine in advance a question which may never arise.

We conclude that the attack made by petitioners upon the method used by the Legislature in classifying the various districts under the above provisions of the law may not be sustained.

It is urged that by article 1, sec. 5(a), the Legislature has made a special ad valorem tax levy of 15 mills upon school districts where no school is maintained; that this is a "mandatory tax levy" and violative of art. 5, sec. 59, and article 10, sec. 20, of our Constitution; and by article 1, sec. 6 of the act, the Legislature has devised that county excise boards shall appropriate such money for transfer fees. They cite School District No. 4 of Garfield County v. Independent School District No. 4½ of Garfield County, 153 Okla. 171, 4 P.2d 1031, and School District No. 85, Kay County, v. School District No. 71, Kay County, 135 Okla. 270, 276 P. 186.

The cases cited by plaintiffs involve the constitutionality of section 10607, C. O. S. 1921. This statute we held to be unconstitutional. In that statute it was provided that the "excise board shall in every case make and provide a levy which will be sufficient to raise the amount of transfer fees required." In the section of the act now considered, it is provided:

"If no school is maintained in a district from which pupils are transferred, the maximum funds available from a fifteen (15) mill levy (or its equivalent in funds used for mandatory tax reduction purpose) and all other miscellaneous revenue, including cash surpluses, and surplus net current tax in process of collection, shall be appropriated for transfer fees even though in excess of the per capita cost of the district to which the pupils are transferred as calculated for districts as provided in this act."

It is obvious that this is not a levy by the Legislature. It is equally as obvious that this is not a mandatory levy for two reasons: (1) If such a school district has available the equivalent of a 15-mill levy in funds used for mandatory tax reduction purposes, no levy is required, and (2) the only mandatory feature contained in this section is that in the event the school district desires to maintain in existence that school district from which all pupils are transferred, that is, to retain its identity as

a school district and transfer all of its pupils and not be disorganized or annexed to another district as provided by the act, then it is necessary that a 15-mill levy, if no equivalent fund for mandatory tax reduction purposes is available, be levied. The objectionable feature of section 10607, C. O. S. 1921, which authorized the levy by the county excise board, is not present in article 1, sec. 5(a) of the act. Here is merely set up a standard by the Legislature to which such school districts which desire to transfer all their pupils and yet retain their identity as a school district must conform.

It is contended that article 1, sec. 4, of the act, contravenes that portion of article 10, sec. 19 of the Constitution of Oklahoma, which provides:

"No tax levied and collected for one purpose shall ever be devoted to another purpose."

The section of the act complained of in effect provides that the transfer fee shall include 8 per cent of the total cost of buildings already constructed and paid for. It is urged that the effect of such provision is to cause the sending district to be required to make a fund levy to help finance a sinking fund appropriation in the receiving district and therefore requires a tax levied and collected for one purpose to be devoted to another purpose. And that such constitutional provisions extend to the restoration or reimbursement of monies spent out of certain funds. With this contention we cannot agree. This section does not provide for payment of a sinking fund appropriation nor for restoration or reimbursement of money spent out of sinking fund appropriations, but merely prescribes the manner of calculating transfer fees. That the Legislature considers the cost of educating transfer pupils should properly include an item based on the cost of those facilities paid for by sinking fund obligations is no provision that that portion of the transfer fee is a reimbursement of that sinking fund.

Since we have held that this is no contribution to a sinking fund obligation of the receiving district, there is no merit in plaintiffs' contention that the section under consideration violates article 10, sec. 26, of our Constitution in that the people of the sending district are being forced to contribute to a sinking fund obligation without the right to approve or disapprove such expenditure by vote.

It is contended that article 2, sec. 3(a), which provides in part:

"Provided, further, that the existing bonded indebtedness of the annexing district shall not apply to the annexed district for a period of not less than three (3) years,"

—has the effect of spreading the indebtedness against the property in such annexed districts which was outstanding prior to the annexation and upon which the taxpayers of the annexed district did not have the right to vote contrary to article 10, sec. 26, of the Constitution. We cannot agree that the Constitution is violated. In Lowden et al. v. Luther, County Treas., 190 Okla. 31, 120 P.2d 359, we said:

"And it seems clear, and we hold, that section 26, art. 10, of the Constitution is not violated by subjecting the taxable property in the annexed territory to taxation to pay the pre-existing debts of the district to which it is annexed. (Cases cited.)"

It is next contended that the provisions of article 3, sec. 5, subds. 6(a), and 6(b), which provide in effect that state aid shall be reduced to the extent that the assessed valuation of property in the county is less than the equated valuation, which shall be 50 per cent of the actual value of such locally assessed property of the county, and that such equated value shall be based on data furnished out of the Oklahoma Tax Commission's study of the relationship between current locally assessed valuations and the transaction (actual) values disclosed by its study for its report to the State Board of Equalization in 1945, showing the percentage that the current

locally assessed valuation of taxable property in each county bears to said actual valuation is unjust, discriminatory and capricious. Plaintiffs complain that the use of the 1945 study is discriminatory because the equated value would be based upon arbitrary valuation figures, and that no provision for change in property valuation is made and that, therefore, the act is not prospective in operation and because it would discriminate against certain school districts within a county which might be paying taxes at the level of the equated valuation together with other districts within the same county whose valuation is in a lower ratio so far as to incur the penalty.

We believe that it is within the province of the Legislature to insure that the portion of the minimum program income under the act to be provided by the revenue from the 15-mill levy is based upon a uniform and sufficient rate of assessment among the counties. The amount of state aid is the difference between the minimum program, which is the cost, and the minimum program income. Unless there is uniformity of requirement as to minimum program income, the sharing of state aid would be inequitable to those school districts which provide a greater portion of the total cost of education through a 15-mill levy based upon a higher ratio of assessed valuation to actual valuation. It is clearly the intention of the Legislature to restrict the amount of state aid to that amount over and above a minimum figure to be provided by the school district. To make a fair and uniform requirement insofar as that portion of minimum program income resulting from the 15-mill levy is concerned, the Legislature put upon the State Board of Education the duty of making an equated valuation of 50 per cent of the actual value. To accomplish this, there must be data concerning the actual value of the property within the counties. The assessed valuation of the property within the counties is a matter of record.

In Excise Board of Washita County v. Lowden, 189 Okla. 286, 116 P. 2d 700, we held that an act failing to provide adjustments for future changes in population (the provisions being based upon the 1930 Federal Census) was general in scope and not a special act and unconstitutional. Nor do we think the use of the data from the 1945 study in making the equated valuation makes the act objectionable as special legislation. Future changes may be adjusted by future legislation. The question whether the Board of Education is bound to this source of information (the 1945 study) until directed to another source by future legislation is not before us. Whether the use of the 1945 study by the Board of Education is mandatory or the 1945 study is merely indicated as a source of information, most recent in time, gathered by a recognized state agency and presumptively fair and reasonable to all parties, need not now be considered in view of the separability clause contained in the act. If, at a later date, there is later and better information from which the equated valuation could be calculated, the question whether the 1945 information must be used might be raised.

The final contention of the plaintiffs as regards taxation is that the apportionment of money from motor vehicle license taxes and gross production taxes only to those school districts where pupils attend school and denying a share in the apportionment of such monies to those school districts transferring all of their pupils, in effect, violates article 10, sec. 5 of our Constitution requiring that taxes shall be uniform on the same class of subjects. By rather specious reasoning plaintiffs insist that to apportion such monies only among school districts in which pupils go to school causes the ad valorem tax in those school districts transferring all of their pupils to be higher and not uniform since the transfer fees must be paid by an increased ad valorem tax levy. We see no merit in this contention. This act levies no tax. The tax levied for

motor vehicle licenses is not under attack, nor is the gross production tax. The act here merely apportions the revenue of other tax acts. These are state revenues and the distribution thereof is a matter of legislative concern.

Writs denied.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, GIBSON, and LUTTRELL, JJ., concur. CORN, J., concurs in result.